690 F.2d 1086
 RICHMOND HILTON ASSOCIATES, A Virginia Limited Partnership;
Jaimen Enterprises, Inc., A Virginia Corporation;
Continental Hotel Management, Inc., A Virginia Corporation;
James C. Bristow, and Allan M. Voorhees; John J. Hanky, Jr.
and Herman Beckstoffer, Jr., d/b/a Canal Square Associates,
a Virginia General Part.; Appellees,
v.
The CITY OF RICHMOND, Virginia, A Virginia Municipal
Corporation; The Council of the City of Richmond, Virginia,
the governing body of the City of Richmond, including all
members of the Council of the City of Richmond in their
official capacities; The Planning Commission of the City of
Richmond, Virginia, An administrative agency of the City of
Richmond, including all members of the Planning Commission
in their official capacities; Richmond Redevelopment and
Housing Authority, A Virginia Redevelopment and Housing
Authority; Henry L. Marsh, III, in his official capacity as
Mayor of the City of Richmond; Manuel Deese, in his official
capacity as City Manager of the City of Richmond; Charles T.
Peters, Jr., in his official capacity as Director of
Planning and Community Development of City of Richmond;
William H. Hefty, in his official capacity as Acting City
Attorney of City of Richmond; Roland L. Turpin, in his
official capacity as Executive Director of the Richmond
Redevelopment and Housing Authority; Appellants,
and
The Beacon Companies, A Massachusetts Limited Partnership;
Helmsley-Spear Hospitality Services, Inc., A New York
Corporation; Henry L. Marsh, III, Individually; Manuel
Deese, Individually; Charles T. Peters, Jr., Individually;
William H. Hefty, Individually; Roland L. Turpin,
Individually; Stephen W. Brener, Executive Vice-President of
Helmsley-Spear Hospitality Services, Inc., Defendants.
 No. 82-1364.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 9, 1982.
Decided Sept. 30, 1982.
 
 John Vanderstar, Washington, D. C. (Virginia G. Watkin, Stephen Calkins, Charles E. M. Kolb, Covington & Burling, Washington, D. C., on brief), for appellants.
 Thomas G. Slater, Jr., Richmond, Va. (Daniel A. Carrell, Jack E. McClard, Donald R. Schmidt, Hunton & Williams, Richmond, Va., on brief), for appellees.
 Before WINTER, Chief Judge, HAYNSWORTH, Senior Circuit Judge, and RUSSELL, Circuit Judge.
 HARRISON L. WINTER, Chief Judge:
 
 
 1
 This is an appeal from an order of the district court prohibiting the law firm of Covington & Burling from representing certain defendants in both their official and individual capacities, but permitting the firm to represent them solely in either capacity. The plaintiffs had sued four governmental entities, a number of government officials in their official capacities, five of the same government officials in their individual capacities, several private firms and one private individual, alleging violations of the federal antitrust and civil rights laws, as well as various state laws. The law firm of Covington & Burling was retained to represent all of the defendants except the private firms and the private individual. The district court held that the law firm could represent the governmental entities and the government officials in their official capacities, on the one hand, or the five government officials in their individual capacities, on the other hand, but not both. We reverse the order of the district court.
 
 I.
 The facts alleged in the pleadings follow:
 
 2
 The City of Richmond has plans for a city-backed urban development project called "Project One," to revitalize downtown Richmond. Project One is to include office buildings, a convention center-hotel complex, and other buildings. The planned convention center-hotel complex is considered the linchpin of the development. In the view of some consultants, the project would not be economically feasible without it.
 
 
 3
 As an independent project, certain of the plaintiffs wish to build a Hilton Hotel in Richmond. To that end, in early 1981 they acquired an option to purchase a parcel of real estate in Richmond located six or seven blocks from the Project One area. The parties who agreed to sell the parcel (the middlemen), also plaintiffs, then owned only a portion of the parcel. The middlemen subsequently contracted to purchase the remainder of the parcel from its owner, the Richmond Metropolitan Authority (RMA). RMA originally acquired the land for a proposed highway but later determined that the land would not be needed.
 
 
 4
 In July 1981, the Project One developer persuaded Henry Marsh, a member of the Richmond City Council and the Mayor of Richmond, that the construction of a Hilton Hotel might destroy the feasibility of the planned convention center- hotel complex, and thus destroy the feasibility of Project One. Marsh thereafter opposed the construction of plaintiffs' proposed Hilton Hotel. Initially, he worked behind the scenes. For example, he wrote to plaintiffs asking them to drop their plans, pressured city officials to reject plaintiffs' request for a minor zoning variance, and pressured city officials not to attend the press conference at which plaintiffs announced their plans. When plaintiffs did not relent, Marsh enlisted the support of other city officials, including four other members of the nine-member City Council, and took public steps to block the construction of a Hilton Hotel.
 
 
 5
 First, Marsh and his allies took steps to prevent RMA from conveying its unwanted property to the middlemen. The City Council, by a split vote, authorized the Acting City Attorney to file suit in state court claiming that the City possessed a reversionary interest in the property and that RMA could not give good title unless the City conveyed its interest. In response, the middlemen made a formal request that the City convey its interest, but this request was denied by the City Manager, a Marsh ally. Likewise, in the City Council, a proposed ordinance which would have directed the City to convey its interest was defeated by Marsh and his allies. The lower state court eventually dismissed the lawsuit, and an appeal is now pending before the Supreme Court of Virginia. RMA has not conveyed its unwanted property to the middlemen.
 
 
 6
 Second, Marsh and those voting with him prevented plaintiffs from obtaining approval for their proposed development from the City's Director of Planning and Community Development, Charles Peters, and the Richmond Planning Commission (RPC). Such approval is a prerequisite for construction. The City Council, again by a split vote, enacted Ordinance No. 81-200 requiring Peters and RPC to reject any proposed development which was not consistent with the objectives of Project One. After Peters rejected plaintiffs' proposed development and RPC affirmed his decision, plaintiffs filed the present suit in the United States District Court for the Eastern District of Virginia.
 
 
 7
 The City of Richmond, the City Council, RPC, and the Richmond Redevelopment and Housing Authority (RRHA) (the vehicle for Project One) were the governmental entities named as defendants. The members of the City Council, the members of RPC, Marsh, the City Manager, Peters, the Acting City Attorney, and the Executive Director of RRHA were the individuals sued as government officials in their official capacities. Marsh, the City Manager, Peters, the Acting City Attorney, and the Executive Director of RRHA were the five government officials also sued in their individual capacities. The complaint alleged violations of the federal antitrust statutes, the federal civil rights statutes, state statutes and state common law. Plaintiffs sought compensatory damages of $80 million (which could be trebled under the federal antitrust statutes) and punitive damages of $10 million. The Acting City Attorney employed Covington & Burling to represent all of the defendants just mentioned.
 
 
 8
 On February 18, 1982, the district judge to whom the case was assigned received a letter from William Leidinger, one of the members of the City Council who had opposed Marsh and his allies. Writing on behalf of himself and the other three members of the City Council minority who had neither approved the Acting City Attorney's filing of the suit questioning title nor the adoption of Ordinance No. 81-200, Leidinger asked the district court to disqualify Covington & Burling. Leidinger thereafter spoke at a hearing held to consider his request, arguing that the steps Marsh had taken to block the construction of a Hilton Hotel before the City Council had first considered the question had not been undertaken in his official capacity and that there was a conflict of interest in Covington & Burling's representation of the defendants sued in their official capacities and the four defendants also sued in their individual capacities. The district court thereafter entered the order from which this appeal is taken.
 
 II.
 
 9
 A decision of a district court limiting the participation of a law firm in a case before it will often be reviewed on appeal under the abuse of discretion test. However, as we stated in Aetna Casualty & Surety Co. v. United States, 570 F.2d 1197, 1200 (4 Cir.), cert. denied, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978), the abuse of discretion test is inappropriate "where only a purely legal matter is at issue." Given that the decision of the district court was founded on the pleadings and the letter and statement of Leidinger and not on any resolution of disputed facts, we think that the Aetna exception is applicable in the present case. Accordingly, our task is "to determine whether the District Court's disqualification order was predicated upon a proper understanding of applicable ethical principles." Woods v. Covington County Bank, 537 F.2d 804, 810 (5 Cir. 1976). We conclude that it was not.
 
 
 10
 In the absence of consent, "(a) lawyer should decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment," Disciplinary Rule 5-105(A) of the Code of Professional Responsibility, and "(a) lawyer shall not continue multiple employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client," Disciplinary Rule 5-105(B) of the Code of Professional Responsibility. These rules prescribe as the test of proscribed dual employment whether the interests of two clients will be or are likely to be in conflict. In Aetna, we had occasion to consider what was an actual or likely conflict of interest. We turn to a consideration of it as an aid to decision here.
 
 
 11
 There, the plaintiffs sued four federally-employed air traffic controllers and the United States, charging that the defendants' negligence had caused a plane crash. It was conceivable, of course, that the controllers would try to shift full blame onto the United States, and vice versa. For that reason, the district court declared that an "actual conflict" of interest existed and relied on the Disciplinary Rules quoted above to prohibit government counsel from representing the controllers, despite the fact that there was no present conflict between the positions taken by the controllers and the United States in the defense of the lawsuit. We reversed. We stated that nothing in the record supported the district court's finding that an "actual conflict" of interest existed, noting that the finding was "based solely upon conjecture" and ignored the absence of a present conflict between the positions taken by the two groups of defendants in the defense of the lawsuit. 570 F.2d at 1200-01.
 
 
 12
 We also pointed out several "practical considerations which appropriately should have entered into the disposition of the motion (to disqualify)." Id. at 1201. First, the plaintiffs had alleged, and the United States had admitted, that the controllers had been acting within the course and scope of their employment at the time of the crash. Second, under 28 U.S.C. § 2676, if the United States and the controllers were found to be jointly liable, the United States would be required to pay all of the damages. In other words, it was a virtual impossibility that the United States, having admitted agency, would attempt to shift full blame onto the controllers or that the controllers, having no financial incentive to do so, would seek to shift full blame onto the United States.
 
 
 13
 Like Aetna, there is not in this case at this time any actual conflict between the positions taken by the defendants sued in their official capacities and the defendants also sued in their individual capacities in the defense of the lawsuit. Counsel advised us in oral argument that none of the defendants sued in his official capacity had asserted or intended to assert that the actions of those sued in their individual capacities were ultra vires. Although the potential of such a conflict here is probably greater than it was in Aetna-as, for example, if there were a change in policy with regard to the defense resulting from a change of municipal administration-we do not think that the potential is so great that Covington & Burling must now be disqualified.
 
 
 14
 In the present case, the district court correctly recognized that a disqualification could not be supported by the mere possibility of a conflict between the positions taken by the two groups of defendants in the defense of the present suit, but held that a present conflict existed because of the position taken by Leidinger and the three other members of the City Council for whom he spoke. We think that this was error. The district court mistook a political conflict for a conflict between positions. Leidinger and the three members of the City Council for whom he spoke are parties in this lawsuit solely in their official capacities, and the position taken by the majority of the City Council is their position. There was no conflict between the positions taken by the majority of the City Council and the individual defendants in the defense of the present suit at the time the district court entered its order,[1] nor have we been informed of any change in the situation. Accordingly, the district court's order cannot stand.[2]
 
 REVERSED.[3]
 
 15
 DONALD RUSSELL, Circuit Judge, dissenting.
 
 
 16
 I dissent.
 
 
 17
 A municipality such as the defendant The City of Richmond, may be liable in an antitrust suit. See Community Communications Co. v. Boulder, --- U.S. ----, ----, 102 S.Ct. 835, 839, 70 L.Ed.2d 810, 817-18 (1982); Lafayette v. Louisiana Power & Light Co., 435 U.S. 389, 412-13, 98 S.Ct. 1123, 1136, 55 L.Ed.2d 364 (1978). Whether the conduct of its officials is sufficient to support municipal liability in an antitrust suit, however, is generally a question of considerable difficulty. When a municipality and its officers are sued together in such a suit with municipal liability based on respondeat superior and with the personal liability of the officers based on their individual involvement in the alleged conspiracy, there is an inevitable potential for conflict of interest both in relation to the facts and the law. The municipality may well assert that the actions of its officers and employees were personal actions of those officers for which it (the municipality) is not responsible and for which it may not be liable. On the other hand, the officers and employees may be benefitted personally by involving the municipality in their actions, if, in no other way, by reducing their own liability and responsibility or by adding the municipality thereby securing another party with big pockets to share with them in the discharge of liability (assuming, of course, liability is found).
 
 
 18
 The majority opinion recognizes this possibility of conflict arising between the municipality and the individual defendants in this case, but dismisses its present relevancy because the defendant municipality in this case (acting on the authority of a then existing majority of the Council) has stated that it does not intend to contend that the actions of the individual defendants on which the suit is premised were "ultra vires," which I assume means that the municipality accepts responsibility for the actions of the individual defendants so far as those acts are involved in the alleged violation herein. But the point, as I view it, is that, in making that decision, the majority was acting on the basis of advice given it by its counsel in this case. Yet, in rendering that advice, counsel should be free of any obligation to the individual defendants. There is, under this reasoning, a present conflict of interest in the same law firm representing both the municipality and the individual defendants. For that reason, I think the District Court acted properly in holding that the same law firm could not represent both the defendant municipality and the individual defendants, and I accordingly dissent.
 
 
 
 [1]
 After the district court gave its decision orally from the bench, but before it filed its order, defendant Peters in his individual capacity moved in the district court that Covington & Burling be prohibited from choosing to represent the individual defendants and that the Acting City Attorney be required to appoint separate counsel for Peters in his individual capacity. The district court's ruling, if presently made, is not before us. The motion was based on an assertion by Peters that he had not joined in any conspiracy with the other individual defendants to block the construction of the Hilton Hotel. Peters' motion does not indicate that there is a conflict between the governmental entities and the official defendants, on the one hand, and the individual defendants, on the other hand, so the existence of Peters' motion does not support the order of the district court now before us
 
 
 [2]
 The appellants argue that the district court's order was erroneous in any event because the defendants have consented to the multiple representation. It is not necessary that we pass on this argument, and we decline to do so. We have already concluded that the position of the City Council majority should be attributed to the City Council minority for the purpose of determining whether a present conflict exists between the positions taken by the two groups of defendants in the defense of the lawsuit. We would find it more difficult, however, to hold that the implicit consent of the City Council majority to the multiple representation should be attributed to the City Council minority
 
 
 [3]
 Since the preparation of this opinion and the dissent, counsel have advised the panel of a change of administration in the government of the City of Richmond and the fact that substitute counsel will represent some of the parties. The case is not, however, moot, and the opinions are filed, despite the change of circumstances, because they set forth the legal principles which should be followed by the district court on remand