The VEGETABLE KINGDOM,
INC., Plaintiff,

v.

Mollie KATZEN, Phillip Wood, and
Phillip Wood, Inc., Defendants.

PHILLIP WOOD, INC., d/b/a Ten
Speed Press, Cross-Claimant,

v.

Mollie KATZEN, Cross-Defendant.

Mollie KATZEN, Third-Party Plaintiff,

v.

Susan HARVILLE, Susan Cheney, Flora
Marranca, Joan Adler, Ashley Miller,
Celeste Tischler Materi, Bob Love, Lin-
da Dickinson, David Hirsch, Jim Le-
gott, Yvonne Fisher, Ira Rabois, Cary
Joseph, Lisa Wichman, Therese Tis-
chler, Andrea Gladstone, and Mitch
Weiss, individually and as partners of
"Estelle," a New York General Partner-
ship, and "Estelle," a New York Gener-
al Partnership, Third-Party Defend-
ants.

No. 85–CV–728.

United States District Court,
N.D. New York.

Feb. 19, 1987.

918

Moses & Singer, New York City, for plaintiff and third-party defendants Susan Harville, Flora Marranca, Ashley Miller, Linda Dickinson, Ira Rabois, Cary Joseph, Therese Tischler, Mitch Weiss, and "Estelle"; Jules F. Simon, of counsel.

Byoucos, Barney, Grossman & Ross, Ithaca, N.Y., for plaintiff and the above-named third-party defendants; Peter Grossman, of counsel.

Lacy, Katzen, Ryen & Mittleman, Rochester, N.Y., for defendant and third-party plaintiff Mollie Katzen; Peter T. Rodgers, of counsel.

Mentor, Rudin & Trivelpiece for defendant and third-party plaintiff Mollie Katzen; Edward M. Zachary, of counsel.

Townsend & Townsend, San Francisco, Cal., for defendants Phillip Wood and Phillip Wood, Inc.; Dirk B. Foster, of counsel.

Coulter, Fraser, Ames, Bolton, Bird & Ventre, Syracuse, N.Y., for defendants Phillip Wood and Phillip Wood, Inc.; Bruce Bolton, of counsel.

Bixler & Stumbar, Ithaca, N.Y., for third-party defendant Susan Cheney; L. Richard Stumbar, of counsel.

MEMORANDUM–DECISION
AND ORDER

MUNSON, Chief Judge.

Before the court are two motions brought by defendant and third-party plaintiff Mollie Katzen. Katzen seeks to disqualify the law firm of Moses & Singer, which represents plaintiff Vegetable Kingdom, Inc. ("Vegetable Kingdom" or "plaintiff") from also representing the third-par-

ty defendants named in Katzen's third-party complaint on the grounds of an alleged conflict of interest. Katzen has also moved for a protective order staying the taking of her deposition until the disqualification motion has been resolved and Katzen has been able to serve all of the parties named in her complaint. On the basis of the following, both motions are denied. Further, sanctions are imposed on Katzen's attorneys pursuant to 28 U.S.C. § 1927 (1982).

## I. BACKGROUND

Vegetable Kingdom, a New York corporation, commenced this lawsuit against defendants Katzen, Phillip Wood, and Phillip Wood, Inc., a California corporation doing business as Ten Speed Press, alleging, *inter alia,* breach of contract and trademark infringement in violation of New York law and of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1982).[1] This dispute arises out of Katzen's publication of the successful vegetarian cookbook entitled *The Moosewood Cookbook.*

From 1972 to date, Vegetable Kingdom has owned and operated the Moosewood Restaurant, located in Ithaca, New York. Katzen was one of the original shareholders of Vegetable Kingdom. Plaintiff alleges that in 1974 Katzen and other workers at the restaurant prepared the original version of *The Moosewood Cookbook.* A revised version was published in 1975 with notice of copyright in the Moosewood Restaurant. In August 1976 Katzen unsuccessfully attempted to register a claim to copyright in the 1975 work in the names of the Moosewood Restaurant and Mollie Katzen. One month later, Katzen was successful in obtaining a copyright in the 1975 revision in her name as the sole author of that work. In her application for registration of her claim to copyright, Katzen represented to the copyright office that she was "doing business as Moosewood." Amended Complaint, Ex. B.

In 1976 Katzen initiated negotiations with Wood, seeking the publication and national distribution of the cookbook through the Ten Speed Press. In January 1977 Katzen informed Vegetable Kingdom of these negotiations and sought the corporation's consent to the use of the "Moosewood" name in the title of the book. Thereafter, Vegetable Kingdom discovered that Katzen had procured registration of copyright in the 1975 revision of the cookbook in her name only. To clarify the rights of the parties and to resolve any disputes over the use of the "Moosewood" moniker, Vegetable Kingdom and Katzen entered into a written agreement on February 18, 1977 ("1977 Agreement"). This agreement is the basis for plaintiff's contract claim against Katzen.

Under the terms of the 1977 Agreement, the parties agreed that Katzen was "the sole and exclusive owner of the cookbook known as 'Moosewood Cookbook'" and that the corporation would "assign[ ] the exclusive right to use the name 'Moosewood' as it applies to the cookbook." Amended Complaint, Ex. C, ¶ 1. Katzen acknowledged that she adopted the name "Moosewood" from the Moosewood Restaurant, and further agreed to pay over to plaintiff ten percent of any royalties she received from the sale of the cookbook "during the term of this contract." Amended Complaint, Ex. C, ¶¶ 2, 3. Thereafter, a revision of the 1975 version of the cookbook was published in 1977, and Katzen commenced making payments to Vegetable Kingdom pursuant to the terms of the 1977 Agreement.

In 1979 "Estelle," a New York partnership ("the partnership" or "Estelle"), was formed for the sole and exclusive purposes of purchasing all of the outstanding shares of stock in Vegetable Kingdom and of directing the management of that corporation. On January 8, 1979 the partnership

---

**1.** Plaintiff's amended complaint also included claims predicated upon the Copyright Act, 17 U.S.C. §§ 101 *et seq.* (1982). In a memorandum-decision and order dated March 14, 1985 the Honorable Abraham D. Sofaer, United States District Judge for the Southern District of New York, granted defendants' motion for summary judgment on the issue of copyright ownership.

entered into an agreement ("1979 Agreement") with the seven shareholders of Vegetable Kingdom, including Katzen, which effectuated the sale of all outstanding shares of Vegetable Kingdom stock to the partnership. The following language was included in the agreement:

> All parties to this agreement acknowledge that Mollie Katzen has the exclusive right to the use of the name "MOOSEWOOD" in connection with the writing, printing, or publishing of any cookbook; and each party hereby assigns the exclusive right to so use the name "MOOSEWOOD" to Mollie Katzen.

> All parties acknowledge that Estelle has the sole and exclusive right to the use of the name "MOOSEWOOD" in connection with the operation or ownership of any restaurant ... or any other eating and drinking place or any other business involved with the sale of food or food products within 150 miles of Ithaca, New York, and each party hereby assigns the exclusive right to so use the name "MOOSEWOOD" to Estelle.

> Each party to this agreement acknowledges that except for the two above-mentioned exclusive rights to the use of the name "MOOSEWOOD" each party has the right to use the said name at present and it is the intention of each party that each party to this agreement will continue to retain the right to use the name "MOOSEWOOD." Therefore, no party shall do any act which would in any way interfere with any other party's right to use the name "MOOSEWOOD" except in connection with a cookbook or a food establishment within 150 miles of Ithaca, New York, as above-mentioned.

Third-Party Complaint, Ex. C, ¶¶ 5–7.

Between 1977 and April 10, 1981 Katzen paid Vegetable Kingdom a total of $16,-896.07 pursuant to the terms of the 1977 Agreement. By letter dated December 24, 1981, however, Katzen claimed that she was no longer obligated under that agreement and announced her intention to cease making payments to plaintiff. Thereafter, in March 1984, Vegetable Kingdom commenced this action.[2] Vegetable Kingdom seeks contract damages for the alleged breach of the 1977 Agreement. In the alternative, plaintiff argues that the 1977 Agreement should be interpreted as an executory accord, and that Katzen's breach of that accord entitles plaintiff to assert its right to ownership of the 1975 version of the cookbook and its subsequent derivations, as well as to pursue any trademark claims it has arising out of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* (1982), and New York law.

In May 1985 Katzen commenced a third-party action against the partnership and its seventeen individual partners. Katzen seeks indemnification for any liability incurred as a result of Vegetable Kingdom's trademark claims, as well as compensatory and punitive damages for breach of contract and misrepresentation. All of her claims are tied to the 1979 Agreement. Katzen has served summons and complaint on several, but not all, of the named third-party defendants. All but one of the third-party defendants who have been served, including the partnership itself, have appeared through Moses & Singer, the law firm representing Vegetable Kingdom in this action.

Katzen now moves for the disqualification of Moses & Singer as attorneys for any of the third-party defendants. She claims that if she is adjudged to have infringed Vegetable Kingdom's trademark rights, then the partnership necessarily has breached the warranties contained in the 1979 Agreement that are quoted above and is liable for any damages recovered by Vegetable Kingdom under its trademark theories of recovery. If the representa-

---

**2.** This action was originally commenced in the Southern District of New York. Venue was based upon 28 U.S.C. § 1400 (1982), a specific venue statute relating to patent and copyright claims. After Judge Sofaer dismissed plaintiff's copyright claims, *see supra* note 1, that statute was no longer applicable and a change of venue pursuant to 28 U.S.C. § 1406(a) (1982) was mandated. By order dated April 29, 1985 and signed by Judge Sofaer, this action was transferred to the Northern District of New York.

tions contained in the 1979 Agreement are true, Katzen asserts, Vegetable Kingdom must lose on its trademark claims, but if they are false, the third-party defendants would be liable to her on her third-party claims. It is argued that it is in the best interest of the partnership and the named partners for Vegetable Kingdom to fail in pursuing its trademark claims, and thus the representation of both the plaintiff corporation and the third-party defendants by the same law firm raises an unavoidable conflict of interest. The attorneys for Vegetable Kingdom and the third-party defendants, on the other hand, claim that the alleged conflict of interest is more illusory than real and that in any event the third-party defendants have been fully apprised of any potential conflict and have given written consent to their continued representation by plaintiff's counsel. Katzen has also moved for a protective order staying the taking of her deposition until the resolution of the disqualification motion and until all third-party defendants have been personally served in this action.

## II. DISCUSSION

### A. *Disqualification Motion*

Courts have traditionally reserved for themselves the power to disqualify counsel when necessary to protect individual litigants, *Brown & Williamson Tobacco Corp. v. Daniel International Corp.,* 563 F.2d 671, 673 (5th Cir.1977), and "to preserve the integrity of the adversary process in actions before them." *Board of Education v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979). The Second Circuit has recognized two circumstances under which disqualification might be appropriate:

(1) where an attorney's conflict of interests in violation of Canons 5 and 9 of the Code of Professional Responsibility undermines the court's confidence in the vigor of the attorney's representation of his client, ... or ... (2) where the attorney is at least potentially in a position to use privileged information concerning the other side [obtained] through prior representation, for example, in violation

of Canons 4 and 9, thus giving his present client an unfair advantage....

*Id.* (footnotes and citations omitted). In the present motion, Katzen urges that a conflict between the interests of Vegetable Kingdom and the interests of the partnership and its individual partners exists, and that Canons 5 and 9 of the Code preclude the representation of these conflicting interests by the same law firm.

■ Motions to disqualify opposing counsel should be approached with "cautious scrutiny." *Laker Airways Ltd. v. Pan American World Airways,* 103 F.R.D. 22, 28 (D.D.C.1984). Even when courts have had misgivings about the conduct of an attorney, the cases reveal considerable reluctance to resort to the severe remedy of disqualifying a party's chosen counsel from representing that party. *See, e.g., Richmond Hilton Associates v. City of Richmond,* 690 F.2d 1086, 1089 (4th Cir. 1982); *Nyquist,* 590 F.2d at 1246. This reluctance results from concerns over the "immediate adverse effect" disqualification has on the client separated from his lawyer, *Nyquist,* 590 F.2d at 1246, the desire "to preserve, to the greatest extent possible, ... the individual's right to be represented by counsel of his or her choice," *Hull v. Celanese Corp.,* 513 F.2d 568, 569 (2d Cir.1975), and the awareness that disqualification motions are being made, with increasing frequency, with purely strategic purposes in mind. *Smith v. Whatcott,* 757 F.2d 1098, 1099–1100 (10th Cir.1985); *Nyquist,* 590 F.2d at 1246; *International Electronics Corp. v. Flanzer,* 527 F.2d 1288, 1289 (2d Cir.1975). Moreover, the Second Circuit has noted that what constitutes "ethical behavior" on the part of practicing attorneys is often the subject of vigorous debate, *see Armstrong v. McAlpin,* 625 F.2d 433, 443–44 (2d Cir.1980) (en banc), *vacated on other grounds,* 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981), and consequently has expressed a strong preference for allowing the " 'comprehensive disciplinary machinery' of the state and federal bar" to remedy alleged ethical violations occurring during the course of

ongoing litigation. *Id.* at 446 (quoting *Nyquist,* 590 F.2d at 1246); *see also Nyquist,* 590 F.2d at 1248 (Mansfield, J., concurring) ("Only where the attorney's unprofessional conduct may affect the outcome of the case is there any necessity to nip it in the bud. Otherwise conventional disciplinary machinery should be used and, if this is inadequate, the organized bar must assume the burden of making it effective as a deterrent.").

In assessing disqualification motions, courts in this circuit must adopt "a restrained approach that focuses primarily on preserving the integrity of the trial process." *Armstrong,* 625 F.2d at 444. Given the serious consequences that result when a litigant's attorney of choice is prevented from representing him, courts must be particularly wary of a mechanical or didactic application of the Code of Professional Responsibility and must "prevent literalism from possibly overcoming substantial jus-

tice to the parties." *J.P. Foley & Co., Inc. v. Vanderbilt,* 523 F.2d 1357, 1360 (2d Cir. 1975) (Gurfein, J., concurring); *see also North American Foreign Trading Corp. v. Zale Corp.,* 83 F.R.D. 293, 295 (S.D.N.Y. 1979). Therefore, a party making such a motion bears the burden of meeting a "heavy burden" before the disqualification of opposing counsel can be ordered. *Evans v. Artek Systems Corp.,* 715 F.2d 788, 794 (2d Cir.1983). With these constraints in mind, the court will first address whether Canon 5 of the Code would be violated by the multiple representation complained of in Katzen's disqualification motion. Katzen's claim that the conduct of the Moses & Singer firm offends Canon 9 of the Model Code will then be examined.

### 1. *Canon 5*

■ Canon 5 of the Code of Professional Responsibility [3] dictates that an attorney

---

3. Canon 5, "A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client," includes the following relevant provisions:

EC [Ethical Consideration] 5-1 The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of his client and free of compromising influences and loyalties. Neither his personal interests, the interests of other clients, nor the desires of third persons should be permitted to dilute his loyalty to his client.

• • • • •

EC 5-15 If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should resolve all doubts against the propriety of the representation. A lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests....
EC 5-16 In those instances in which a lawyer is justified in representing two or more clients having differing interests, it is nevertheless essential that each client be given the opportunity to evaluate his need for representation free of any potential conflict and to obtain other counsel if he so desires. Thus before a lawyer may represent multiple clients, he should explain fully to each client the implications of the common representation and

should accept or continue employment only if the clients consent. If there are present other circumstances that might cause any of the multiple clients to question the undivided loyalty of the lawyer, he should also advise all of the clients of those circumstances.

• • • • •

EC 5-18 A lawyer employed or retained by a corporation or similar entity owes his allegiance to the entity and not to a stockholder, director, officer, employee, representative, or other person connected with the entity. In advising the entity, a lawyer should keep paramount its interests and his professional judgment should not be influenced by the personal desires of any person or organization. Occasionally a lawyer for an entity is requested by a stockholder, director, officer, employee, representative, or other person connected with the entity to represent him in an individual capacity; in such case the lawyer may serve the individual only if the lawyer is convinced that differing interests are not present.

• • • • •

DR [Disciplinary Rule] 5-105(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5-105(C).
DR 5-105(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf

should exercise independent professional judgment on behalf of the client he represents. Flowing inevitably from this principle is the axiom that an attorney must decline to accept and refuse to continue employment if it "would be likely to involve him in representing differing interests...." Code of Professional Responsibility DR 5–105(A) and (B). When a serious possibility of a potential or actual conflict of interest presents itself, the court must "satisfy itself that no conflict exists or at least provide notice to the affected party if one does." *Dunton v. County of Suffolk*, 729 F.2d 903, 909 (2d Cir.), *modified*, 748 F.2d 69 (1984). This duty arises out of the court's "continuing obligation to supervise the members of its Bar," *id.*, as well as its responsibility "to exercise that degree of control required by the facts and circumstances of each case to assure the litigants of a fair trial." *Koufakis v. Carvel*, 425 F.2d 892, 900–01 (2d Cir.1970). A motion seeking the disqualification of an attorney representing conflicting interests by an unaffected party is an appropriate means by which to bring the alleged conflict to the attention of the court.[4]

The court must first determine whether a potential or actual conflict of interest exists. In the present case, no such conflict is evident. Katzen posits that if Vegetable Kingdom prevails on its trademark claims, the third-party defendants could be required to indemnify her for any judgment taken against her, and thus it is in the best interest of the third-party defendants for Katzen to prevail on Vegeta-

---

of a client will be or is likely to be adversely affected by the representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105(C).

DR 5–105(C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent ·the interest of each and if each consents to the representation after *full disclosure of the possible effect of such* representation on the exercise of his independent professional judgment on behalf of each. Code of Professional Responsibility Canon 5 (footnotes omitted). The Model Rules of Professional Conduct, adopted by the American Bar Association's House of Delegates on August 2, 1983, contain similar provisions:

Rule 1.7  Conflict of Interest: General Rule
(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) The lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
(2) Each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) The lawyer reasonably believes the representation will not be adversely affected; and
(2) The client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

Rule 1.13  Organization as Client

(e) A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders, or other constituents, subject to the provisions of Rule 1.7. If the organization's consent to the dual representation is required by Rule 1.7, the consent shall be given by an appropriate official of the organization other than the individual *who is to be represented, or* by the shareholders.

4. Disciplinary Rule 1–103(A) of the Code of Professional Responsibility mandates that an attorney possessing unprivileged knowledge of another attorney's unethical conduct "shall report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation." Code of Professional Responsibility DR 1–103(A). This court has held that DR 1–103(A) "confers standing on any attorney to challenge a lawyer's representation of a client when he is privy to facts which justify disqualification." *SMI Industries Canada Ltd. v. Caelter Industries, Inc.*, 586 F.Supp. 808, 815 (N.D.N.Y.1984). Thus, Katzen's attorneys have standing to raise the issue of a possible conflict of interest in this motion, even though the third-party defendants, not Katzen, are most directly affected by such a conflict if it exists. *Accord: Kevlik v. Goldstein*, 724 F.2d 844, 848 (1st Cir.1984); *United States v. Clarkson*, 567 F.2d 270, 271 n. 1 (4th Cir.1977); *Brown & Williamson Tobacco Corp. v. Daniel International Corp.*, 563 F.2d 671, 673 (5th Cir. 1977); cf. *Dunton v. County of Suffolk*, 729 F.2d 903, 909 (2d Cir.), *modified*, 748 F.2d 69 (1984) (Attorneys representing other parties in a lawsuit are obligated to report relevant facts regarding apparent conflict of interest on part of opponent's attorney to the court).

ble Kingdom's trademark claims. To embrace this argument, however, one must ignore the actual pecuniary implications of the claims made by the various parties. The partnership wholly owns Vegetable Kingdom; consequently, any favorable judgment obtained by the plaintiff corporation necessarily accrues to the benefit of Estelle. Therefore, there is no conflict created by the dual representation of the corporation and the partnership itself by the same law firm. It follows that if any conflict of interest is present in this case, it results from Moses & Singer's representation of Estelle's individual partners. This conflict, if it exists, would necessarily derive from the nature of the liability of general partners for partnership debts.

■■■ All of Katzen's third-party claims are predicated upon the 1979 Agreement entered into by the partnership. Under New York law, general partners are jointly liable for the performance of contractual obligations undertaken by their partnership. N.Y. Partnership Law § 26(2) (McKinney 1948). A partner is not subject to individual liability on a joint partnership obligation, however, unless "the joint or partnership property is insufficient to pay the firm debts or it appears there can be no effective remedy without resort to individual property." *Wisnouse v. Telsey,* 367 F.Supp. 855, 859 (S.D.N.Y.1973); *see also Cunard Line Ltd. v. Abney,* 540 F.Supp. 657, 659-60 (S.D.N.Y.1982); *In re Peck,* 206 N.Y. 55, 60-61, 99 N.E. 258, 259-60 (1912); *Seligman v. Friedlander,* 199 N.Y. 373, 380-81, 92 N.E. 1047, 1050 (1910). "Indeed, a complaint that fails to allege that a partnership is insolvent and unable to pay its debts is insufficient to state a claim for breach of contract against the partners as individuals." *Cunard Line,* 540 F.Supp. at 660 (citing *Pine Plains Lumber Corp. v. Messina,* 78 A.D.2d 271, 275-76, 435 N.Y.S.2d 381, 384 (3d Dept. 1981)). No such allegation is made in Katzen's third-party complaint, and nothing in the record indicates that the partnership would be unable to satisfy any judgment rendered against it under the 1979 Agreement. In fact, it appears that the partnership would not be liable to Katzen unless Vegetable Kingdom prevails on its trademark claim, and that the extent of Estelle's liability would most likely be equal to or less than the amount of money recovered by the corporation from Katzen.[5] Obvious-

---

5. In the prayer for relief in her third-party complaint, Katzen seeks

> judgment against the Third-Party Defendants in an amount equal to any judgment rendered on behalf of the Plaintiff against the Third-Party Plaintiff on the grounds of trademark infringement, or in the event of any injunction against the Third-Party Plaintiff, a judgment for compensatory damages in the amount of One Million Dollars ($1,000,000); [and]
> On her [misrepresentation] claim, a judgment of punitive damages in the amount of Five Hundred Thousand Dollars ($500,000).

Clearly, any money recovered as indemnification for any money judgment obtained by Vegetable Kingdom on its trademark claims will not exceed the amount recovered by the corporation in this action. Further, any compensation that might be awarded to Katzen if plaintiff obtains injunctive relief would be equal to the value of the corporation's right to use the "Moosewood" name on cookbooks printed and sold in the future. Thus, on these claims the maximum amount that can be recovered by Katzen from the third-party defendants cannot exceed any value obtained by Vegetable Kingdom as a result of this lawsuit.

The only way in which Katzen's recovery from the third-party defendants could conceivably exceed the amount recovered by Vegetable Kingdom in this case is if she prevails on her claim for punitive damages for misrepresentation. Under New York law punitive damages are available in cases sounding in fraud or misrepresentation only when "(a) the fraud is gross, involves high moral culpability and is aimed at the public generally, or (b) the ... conduct [of the party committing the fraud] evinces a high degree of moral turpitude and demonstrates such wanton dishonesty as to imply criminal indifference to civil obligations." *J.G.S., Inc. v. Lifetime Cutlery Corp.,* 87 A.D.2d 810, 448 N.Y. S.2d 780, 781 (2d Dept.1982); *see Walker v. Sheldon,* 10 N.Y.2d 401, 405, 223 N.Y.S.2d 488, 491, 179 N.E.2d 497 (1961). The possibility that Katzen might be able to recover punitive damages from the third-party defendants, however, does not support a finding that a conflict of interest is presented by Moses & Singer's representation of both plaintiff and the third-party defendants. The issues raised when punitive damages are sought for misrepresentation generally concern the moral culpability or bad faith of the party accused of making the misrepresentation. These issues have nothing to do with

ly, since Vegetable Kingdom is one of the partnership's assets, there is good reason to believe that the partnership could satisfy a judgment obtained by Katzen. Therefore, no conflict between the interests of the plaintiff and the individual partners named in Katzen's third-party complaint has been demonstrated.

In short, Katzen's motion for the disqualification of the Moses & Singer firm is founded upon form, not substance. Vegetable Kingdom and the third-party defendants have a "substantial identity of interests," *Brown & Williamson*, 563 F.2d at 673, and thus disqualification on the basis of the alleged violation of Canon 5 is inappropriate.[6]

### 2. *Canon 9*

■ Katzen also argues that Moses & Singer's representation of both Vegetable Kingdom and the third-party defendants violates Canon 9 of the Code, which cautions that "[a] lawyer should avoid even the appearance of professional impropriety." Code of Professional Responsibility Canon 9. However, courts in this circuit have consistently held that only in those rare instances where an attorney's conduct "taint[s] the underlying trial" is disqualification for a violation of Canon 9 appropriate. *Nyquist*, 590 F.2d at 1246. Absent such a showing, "appearance of impropriety is simply too slender a reed on which to rest a disqualification order except in the rarest cases." *Id.* at 1247; *see also Armstrong*, 625 F.2d at 445. In any event, the court is unconvinced that Moses & Singer's

conduct in this case violates Canon 9. First, this case is merely a private dispute implicating "no issues of public significance." *Altschul v. Paine Webber, Inc.*, 488 F.Supp. 858, 861 (S.D.N.Y.1980). Further, by allowing Moses & Singer to represent both plaintiff and the third-party defendants, the court is not establishing an "infectious precedent" that threatens to erode public confidence in the law or our legal system. *See id.* Because of the identity of interest between the plaintiff and third-party defendants previously discussed, there is no apparent impropriety in the representation of both sets of parties by Moses & Singer. Under these circumstances, the interests protected by Canon 9 are not implicated, and thus a disqualification motion based on that ethical maxim must fail.

### 3. *Sanctions Under 28 U.S.C. § 1927*

■ The court is well aware that disqualification motions are often interposed for tactical reasons wholly unrelated to concerns for the maintenance of the ethical standards of the legal profession. Such motions are often designed to harass opposing counsel, cause delay, or needlessly increase the cost of pursuing a cause of action. Because of this, in part, the courts in this circuit have been reluctant to disqualify attorneys on the motion of opposing counsel. *See Nyquist*, 590 F.2d at 1246. Indeed, the very purpose of establishing ethical guidelines for the profession " 'can be subverted when [the rules] are

---

Vegetable Kingdom's claims against Katzen. By defending against Katzen's claim for punitive damages, Moses & Singer would not compromise in any way the legal position of Vegetable Kingdom.

**6.** Moreover, even assuming the existence of a conflict of interest, disqualification is inappropriate in this case. The court has been supplied with affidavits signed by the individual partners of Estelle represented by Moses & Singer indicating that these individuals have been informed of a possible conflict of interest and have consented to representation in spite of it. Under such circumstances, a court which satisfies itself that consent has been freely and intelligently given should refrain from paternalisti-

cally infringing on a party's right to a lawyer of his choice absent compelling factors indicating that the attorney's loyalty to his client has been incontrovertibly compromised. *See, e.g., Doe v. A Corp.*, 709 F.2d 1043, 1050 (5th Cir.1983); *Unified Sewerage Agency v. Jelco, Inc.*, 646 F.2d 1339, 1350 (9th Cir.1981); *Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 229 (7th Cir.1978); *Smith v. City of New York*, 611 F.Supp. 1080, 1091 (S.D.N.Y.1985); *Tadier v. American Photocopy Equipment*, 531 F.Supp. 35, 37 (S.D.N.Y.1981); *see also* Code of Professional Responsibility DR 5–105(C). The court does not believe that the circumstances surrounding this case warrant an interference with the third-party defendants' free choice of counsel.

invoked by opposing parties as procedural weapons.'" *Kevlik v. Goldstein,* 724 F.2d 844, 848 (1st Cir.1984) (quoting Preamble to Model Rules for Professional Conduct). The court finds this cynical perversion of the commendable objectives which inspired the promulgation of codes of conduct designed to guide an attorney through difficult ethical dilemmas particularly offensive. Moreover, under the circumstances of this case, the court does not harbor a scintilla of doubt that the attorneys representing Katzen brought this motion purely to harass their opponent.

To combat just such abuses of the adversary system of justice, Congress has authorized the federal courts to impose sanctions against attorneys "who so multipl[y] the proceedings in any case unreasonably and vexatiously...." 28 U.S.C. § 1927 (1982). A court, in its sound discretion, may require an offending attorney "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Id.* An award under § 1927 "must be supported by a finding of bad faith...." *Oliveri v. Thompson,* 803 F.2d 1265, 1273 (2d Cir.1986); *Kamen v. American Telephone & Telegraph Co.,* 791 F.2d 1006, 1010 (2d Cir.1986). A finding of bad faith is warranted, however, "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose," such as harassment or delay. *Oliveri,* 803 F.2d at 1273; *see also Acevedo v. Immigration and Naturalization Service,* 538 F.2d 918, 920 (2d Cir. 1976).

Whenever sanctions are contemplated, of course, the court must be mindful of the danger that its action might "stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985). Further, when a motion to disqualify an attorney for an alleged ethical breach is involved, additional considerations unique to such motions caution restraint in invoking the penalty provided by § 1927. First, the court has a strong interest in having potential ethical problems brought to its attention at the earliest possible juncture in actions before it and must not discourage attorneys from doing so through colorable disqualification motions. Second, in light of the affirmative duty placed upon attorneys to report misconduct on the part of fellow practitioners "to a tribunal or other authority empowered to investigate or act upon such violation," Code of Professional Responsibility DR 1–103(A), the court must be sensitive to the danger of creating for attorneys the unenviable dilemma of risking sanctions by making a disqualification motion on the one hand and possibly violating their own ethical obligation to disclose violations of the Code on the other. Nonetheless, these hazards must be weighed against the deleterious effects of the use of disqualification motions for mere tactical purposes. Such motions, if improperly interposed, not only unnecessarily delay lawsuits and needlessly escalate the cost of pursuing a legitimate cause of action, they tend to make a mockery of the noble objectives the Code was designed to further. Thus, the use of disqualification motions as a pretext to harass an opponent and delay litigation has been deemed grounds for sanctions under § 1927. *See, e.g., Wold v. Minerals Engineering Co.,* 575 F.Supp. 166, 167 (D.Colo. 1983).

The court is aware that a mere finding that a party's claim is meritless, standing alone, does not warrant the imposition of sanctions under § 1927; the court must find that the motion was made without plausible legal or factual basis and is completely lacking in justification before sanctions may be imposed. *See Knorr Brake Corp. v. Harbil, Inc.,* 738 F.2d 223, 227 (7th Cir.1984). In the present case, even the most perfunctory investigation of the standards for the disqualification of counsel in this circuit would have revealed that Katzen's motion was completely unsupportable. Katzen was aware that the partnership was the sole shareholder of the corporation, *see* Third-Party Complaint ¶ 4, and knew that the individual partners named in her third-party complaint were

the same individuals who would benefit from any judgment obtained by Vegetable Kingdom. It is difficult to conceive how Katzen's attorney could entertain a good faith belief that Moses & Singer's representation of both Vegetable Kingdom and the third-party defendants truly raised ethical concerns. The only foreseeable result of requiring the third-party defendants to obtain separate counsel under the facts of this case would be a "waste [of] time and money." *Brown & Williamson*, 563 F.2d at 674.

On the record before it, the court is forced to conclude that this motion was made in bad faith. Therefore, the court on its own motion orders Katzen's attorneys to pay the reasonable expenses incurred as a result of the disqualification motion, including a reasonable attorney's fee.

B. *The Motion for a Protective Order*

Katzen has also moved pursuant to Rule 26(c), Fed.R.Civ.P., for a protective order preventing plaintiff from taking her deposition until all of the third-party defendants have been served with summons and third-party complaint and Katzen has received responsive pleadings. Katzen argues that until all of the parties to this lawsuit have been served and have answered, the issues in this action will not be fully defined. Further, Katzen notes that since she lives in California and would be required to travel three thousand miles to be deposed, the possibility that she may be required to appear again at a later date in order to be deposed by a third-party defendant who has not been joined in the action at the time of the initial deposition works a peculiar hardship on her. Finally, Katzen argued that the taking of her deposition would be premature prior to the court's resolution of her disqualification motion, an argument that no longer has force.

The concerns expressed in Katzen's motion papers do not support the granting of a protective order at this time. If Katzen is deposed before the issues in this case have been fully defined it is plaintiff and not Katzen who will be harmed. The fact that all of the named third-party defendants have not been served is not enough to justify delaying the progress of this litigation any further. The court appreciates the burden multiple depositions would place on Katzen, but at this time whether she will be faced with this burden is speculative at best. The time to seek relief is when a party serves notice to take a second deposition. Therefore, Katzen's motion for a protective order is denied.

### CONCLUSION

Defendant and third-party plaintiff Katzen's motion to disqualify the firm of Moses & Singer is denied. Katzen's motion for a protective order is also denied. Within 20 days of the date of this order, Moses & Singer shall submit to the law firm of Lacy, Katzen, Ryen & Mittleman an itemized statement of expenses incurred as a result of the motion for disqualification. Unless specific objections are filed within 30 days of the receipt of the itemization, the firm of Lacy, Katzen, Ryen & Mittleman shall pay to the partnership the sum submitted by Moses & Singer.

IT IS SO ORDERED.