The **AETNA CASUALTY AND SURETY COMPANY, Aetna Insurance Company, American Empire Insurance Company, Commercial Union Insurance Company, Compagnies D'Assurances Du Groupe Concorde, Continental Casualty Company, Employers Mutual Liability Insurance Company of Wisconsin, Hartford Fire Insurance Company, Industrial Indemnity Company, Maryland Casualty Company, Reliance Insurance Company, Royal Indemnity Company, St. Paul Fire and Marine Insurance Company, Security Insurance Company of Hartford, the Travelers Indemnity Company, Underwriters at Lloyd's and Associated British Insurance Companies, United States Fidelity and Guaranty Company, United States Fire Insurance Company and Zurich Insurance Company, Appellees,**

v.

**UNITED STATES of America, Appellant,**

and

**Bernard C. Groseclose, Alden E. Hare, William L. Hogan and Dennis L. Hunter, Defendants.**

No. 77–2303.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 7, 1977.

Decided Jan. 31, 1978.

---

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D.C. (Harold M. Edwards, U.S. Atty., Charlotte, N.C., Robert E. Kopp, Neil H. Koslowe and John F. Cordes, Attys., Appellate Section, Civ. Div., Dept. of Justice, Washington, D.C. on brief), for appellant.

Walter E. Rutherford, New York City, for appellees.

Before HAYNSWORTH, Chief Judge; BUTZNER, Circuit Judge, and FIELD, Senior Circuit Judge.

FIELD, Senior Circuit Judge:

The United States has appealed from an order of the district judge disqualifying the Department of Justice and the United States Attorney from representing four of its individual codefendants in this case. The district court concluded that such representation would violate Disciplinary Rules 5–105(A) and 5–105(B) of the Code of Professional Responsibility adopted by the North Carolina State Bar effective January 1, 1974. 4A Gen.Stat. Append. VII 240 (Supp.1975).[1]

---

1. DR5–105 Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer.

(A) A lawyer should decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected

The substantive litigation arises out of the crash of Eastern Airlines Flight 212 as it approached the airport at Charlotte, North Carolina, on the morning of September 11, 1974. At the time of the crash the individual defendants, Bernard C. Groseclose, Alden E. Hare, William L. Hogan and Dennis L. Hunter, were on duty at the airport as air traffic controllers employed by the Federal Aviation Administration.[2]

The plaintiff insurance companies have paid approximately twenty-five million dollars in settlement of wrongful death, personal injury, and property damage claims arising from the plane crash, and they filed this action on February 9, 1977, against the United States and the four federal air traffic controllers mentioned above. Charging that the negligence of the defendants was the proximate cause of the crash, the plaintiffs seek indemnification and contribution from the defendants for the amounts paid in settlement of the various insurance claims. Jurisdiction for the action against the United States is alleged under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) and for the claims against the individual defendants under 28 U.S.C. § 1332. The plaintiffs have charged, and the Government admits, that at the time of the crash the four individual defendants were acting within the course and scope of their employment.

On March 23, 1977, the four individual defendants, who at the time were represented by the Department of Justice, filed a motion for summary judgment or, in the alternative, to dismiss the complaint. On May 2, 1977, the plaintiff insurance companies filed a memorandum and affidavit in opposition to the motion, and on the same day filed the motion to disqualify government counsel from representing the four air traffic controllers. The district judge conducted a non-evidentiary hearing on the motions on May 17, 1977, and, while indicating that he perceived a conflict of interest on the part of the Government counsel, deferred ruling on the disqualification motion for a period of thirty days in the hope that the matter might be resolved without further action by the court. By order entered on May 19, 1977, the motions of the individual defendants for dismissal or summary judgment were denied.

On June 29, 1977, the Deputy Assistant Attorney General for the Civil Defense Division of the Department of Justice wrote to the district court and requested an opportunity to present additional evidence and argument bearing upon the existence of any potential conflict of interest between the United States and the individual defendants. He further advised the court that the question had been carefully reviewed in the Department of Justice and that the Department could discern "no conflict at the present time", and that the possibility of any conflict developing in the future appeared "extremely remote". He stated that the matter had been discussed at length with the individual defendants and that they had "knowingly and intelligently asserted their desire to be represented jointly by the Department of Justice".

The district court convened a second hearing on July 25, 1977, at which time the

---

by the acceptance of the proffered employment, except to the extent permitted under DR5–105(C).

(B) A lawyer shall not continue multiple employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR5–105(C).

(C) In the situations covered by DR5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

2. Groseclose was Chief of the Air Traffic Controllers at the Charlotte airport. At the time of the crash, Hunter was the approach controller; Hare, a trainee, was the local controller and was being supervised by Hogan.

Deputy Assistant Attorney General was present, together with the four defendant air traffic controllers and counsel for their union. The court was advised that the question of conflict had been discussed with the air controllers in the presence of counsel for their union and that they, with the concurrence of the union counsel, consented to, and indeed demanded, joint representation by the Government. Counsel for the Department of Justice suggested that the court examine the individual defendants *in camera,* or otherwise hear their testimony with respect to the issue of full disclosure and informed consent to joint representation. The district judge, however, declined these suggestions and advised the parties that he would defer action for another ten days, indicating that if the Government failed to change its position he would enter adverse findings on the conflict question. By letter of August 3, 1977, the Department of Justice advised the court that the Government adhered to its position, and on October 14, 1977, the district court entered the order of disqualification from which the Government has appealed.

■ As a prefatory matter, we note that it is now well established that the order of a district court granting or denying a motion to disqualify an attorney is a final order appealable pursuant to 28 U.S.C. § 1291, *MacKethan v. Peat, Marwick, Mitchell & Co.,* 557 F.2d 395, 396 (4 Cir. 1977); *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 496 F.2d 800 (2 Cir. 1974), and we reject the argument of the plaintiffs that the United States is not an aggrieved party and therefore lacks standing to prosecute this appeal. The United States Attorney and the Department of Justice are the targets of the district court's

order and, in our opinion, it would be sophistic to say that the Government is not adversely affected by their disqualification. See *In Re Investigation before April 1975 Grand Jury,* 174 U.S.App.D.C. 268, 274, 531 F.2d 600, 606 (1976).[3]

■ Turning to the merits of the appeal, the plaintiffs contend that the scope of our review is limited to a determination of whether the district court abused its permissible discretion. While some of the cases support the position of the plaintiffs on this point, more recently the courts have expressed serious reservations about whether the limited abuse of discretion standard is appropriate in disqualification cases where only a purely legal question is at issue. *Woods v. Covington Cty. Bank,* 537 F.2d 804 (5 Cir. 1976); *Kroungold v. Triester,* 521 F.2d 763, 765, n.2 (3 Cir. 1975); *American Roller Company v. Budinger,* 513 F.2d 982, 985, n.3 (3 Cir. 1975). We are inclined to agree with the Fifth Circuit that "[i]n disqualification cases such as this, where the facts are not in dispute, District Courts enjoy no particular functional advantage over appellate courts in their formulation and application of ethical norms,"[4] and that it is appropriate for us "to determine whether the District Court's disqualification order was predicated upon a proper understanding of applicable ethical principles."[5]

■ It is our opinion that in disqualifying the Department of Justice in this case the district court erred in two respects. First of all, we find nothing in the record to support the conclusion of the court that "an actual conflict exists."[6] We agree with counsel for the Government that in reaching this conclusion the court appears to have taken the position that the mere exist-

---

**3.** Counsel for the plaintiffs also suggests that we should dismiss this appeal as a sanction against the Government for its violation of the statutory provisions regarding the use of reports of the National Transportation Safety Board. We agree with the Government that the reference to the report in its brief relative to the present appeal does not contravene the statutes in question, 49 U.S.C. § 1903(c) and 49 U.S.C. § 1441(e), which provide that no such reports "shall be admitted as evidence or used

in any suit or action for damages growing out of any matter mentioned in such report or reports."

**4.** *Woods v. Covington Cty. Bank,* 537 F.2d 804, 810 (5 Cir. 1976).

**5.** *Id.*

**6.** App. 143.

ence of multiple defendants in a case such as this inevitably creates a conflict of interest on the part of the lawyer undertaking to represent them. At the hearings and in its order the district court pointed out possible contentions which might be made by each of the four controllers which would exculpate him from liability, but cast the blame upon one or more of his codefendants, including the Government. These hypotheses, however, were based solely upon conjecture and ignored the representation of Government counsel, which was accepted by the court, that in the conference between the representatives of the Department of Justice and the controllers, there was no dispute among them either with respect to their duties and responsibilities or the details of the plane crash.[7]

Bearing further on the question is the fact that there is little or no possibility that the four controllers will incur any personal liability as a result of this litigation. As heretofore noted, the plaintiffs allege, and the Government admits, that the controllers were acting within the course and scope of their employment at the time of the crash, and under such circumstances any finding of negligence against them would be imputed to the Government and place liability upon it under the Tort Claims Act. Additionally, we note that if the Government and the controllers should be held to be jointly liable, the individual defendants would not be required to pay the damages, since a judgment against the United States would automatically bar the entry of any contemporaneous or subsequent judgment against them. 28 U.S.C. § 2676; see *Gilman v. United States,* 206 F.2d 846, 848 (9 Cir. 1953), *aff'd* 347 U.S. 507, 74 S.Ct. 695, 98 L.Ed. 898. These, we think, are practical considerations which appropriately should have entered into the disposition of the motion.

Even, however, assuming the existence of a conflict, we think the district court erred in its reading of Disciplinary Rule 5–105(C) which permits an attorney to represent multiple parties who are in a position of potential conflict "if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each." The court accepted the representations of the Department of Justice relative to such disclosure and consent, but, nevertheless, discounted them entirely upon the basis that such consent "can not be presumed to be fully informed when it is procured without the advice of a lawyer who has no conflict of interest."[8] We find no authority or reason to support the theory that the consent to multiple representation under the Rule can be effective only upon the advice of an independent

---

**7.** This lack of any dispute among the defendants apparently disturbs counsel for the plaintiffs. At the initial hearing on the motion the following colloquy took place:

COURT: Does it hurt the plaintiffs? Does it harm your clients if the defendants happen to have lawyers who can't represent either client adequately?

MR. RUTHERFORD: I think it does because I think and experience has shown that when the government attorney represents everybody in a piece of litigation that the position taken by everybody is uniform, that in effect there is almost a conspiracy of silence as to what truly happened with respect to the air traffic controller management of this particular flight. (App. 61).

From this it appears to us that in filing the motion for disqualification, counsel for the plaintiffs seems to have been motivated more by a desire to fragmentize the defense than by any sensitivity to the ethical considerations involved. While it is true that when such motions are based on Canon 4 of the Code of Professional Responsibility the court must consider the rights of both adversaries in the litigation, Canon 5 is addressed solely to the relationship between the attorney and his immediate clients. With respect to multiple representation, Disciplinary Rule 5–105 is designed to protect the interests of those clients, and their interests alone, and the impact of such multiple representation upon the plaintiffs is irrelevant. We further note that cases involving the multiple representation of criminal defendants are largely inapposite since in such cases the court is required to consider the multiple representation in the light of the constitutional right to effective assistance of counsel under the Sixth Amendment.

**8.** App. 142–143.

attorney, but, in any event, as we have noted, counsel for the air controllers' union participated in the discussions between the individual defendants and the Department of Justice, and we think it reasonable to assume that he was aware of any problems and properly advised the controllers with respect to their best interests.

The district court, however, further took the position that even if there were full disclosure and "fully informed consent", the Government was barred from representation because it was not "obvious" that it could adequately represent the interest of each defendant. In the light of what we have said in this opinion we think it is "obvious" that the Government can adequately represent the interests of the air controllers. Indeed, it appears to us that such representation is highly desirable since these defendants will have the benefit not only of Government counsel but also the reservoir of the Government's expertise in this highly involved and technical litigation, and will be spared the burden upon their time and resources incident to the employment of independent counsel.

Noting that motions to disqualify lawyer-opponents upon alleged ethical grounds have become increasingly common in the litigation process, in *International Electronics Corp. v. Flanzer,* 527 F.2d 1288 (2 Cir. 1975), the Second Circuit requested four bar associations to file briefs on the subject as *amici curiae.* In its brief the Connecticut Bar Association made the following comments:

> It behooves this court, therefore, while mindful of the existing Code, to examine afresh the problems sought to be met by that Code, to weigh for itself what those problems are, how real in the practical world they are in fact, and whether a mechanical and didactic application of the Code to all situations automatically might not be productive of more harm than good, by requiring the client and the judicial system to sacrifice more than the value of the presumed benefits.

527 F.2d at 1293. Viewed in the light of these observations, with which we are in full accord, the plaintiffs' motion should have been denied. Accordingly, we reverse the order of the district court.

*REVERSED.*