966 F.2d 142
 140 L.R.R.M. (BNA) 2564, 30 Wage & Hour Cas.
(BNA) 1556,
122 Lab.Cas. P 35,689
 Michelle SHAFFER; Lionel Alexander; Angela Andrews;
Joseph Banks; Cynthia Bailey; Maria Y. Bailey; Kathy
Baker; John Bane; Katherine Barnette; Kathy Baston;
Victor Bell; David L. Bogart; Baron Booker; Carolyn
Bottoms; Evey M. Brake; Patrice Branch; Ruben Brown;
Frank W. Campbell; Glenn W. Campbell; Regina Carter;
Quanda Carter; John Carver; Murray Edward Clark; Justin
Cole; Floyd Harvey Copeland, III; Katheryn Council;
Charles R. Craig; M. Michelle Davis; Clarence J.
Dickerson; Anthony B. Ellerbe; Harold Epperson; Anthony
B. Faison; Robert Ferry-Leeper; Alfretta Kay Flax;
Catherine Lynn Foster; Charlene Fox; Floyd Gamby; Marilyn
Gardner; James Gonyer, Jr.; Edna L. Gordon; Thomas W.
Graham; Marvin Greene; Daniel Edward Greer; Tony Hardie;
Katie Hardy; Rhonda Harris; Harold F. Hartman, III;
Richard E. Haughton; Paula Hayes; Daryll Henderson; Tammy
C. Henry; Marianne Hierspiel; Grant Holcomb; Vickie L.
Jiles; John A. Johnson; Dwight Jones; Margaret Jones;
Cynthia R. Kirkendoll; Christopher L. Kirkland; Cheryl
Koenig; Johnny Kon; Robert Lee Lindsay; Robbin R. Love;
Darlene L. Mabrey; Lois J. MacPhee; Thomas Mallory;
Joseph W. Manning, Jr.; Jennifer Lynn Marcou; Phil Martin,
Jr.; Thurman Massenburg; Karen Matthews; Bobbie Sue
Melzer; James J. Mills, Jr.; Delores Moore; Terry Nuhfer;
Chris Olworth; William T. Page, Jr.; Neal Paris; Phyllis
Pearson; Tonya Y. Peguese; James F. Percy; Rose M. Poole;
Delores F. Prater; Shenice A. Pritchett; Robert
Puchalski; Kathy Reale; Peggy Moore Reed; James C. Reed,
Jr.; Rachel Robertson; Francis Robinson; Antoinette
Robinson; Gale Rogers; John Charles Salldin; Christine N.
Sawyer; Virginia Schnoor; Patricia G. Schoolcraft;
Janathan A. Sherrod; Jaime P. Shoemaker; Angela M.
Sifford; Cheryl A. Smith; Jackie Spartley; Bertha Louise
Stevenson; Patricia L. Stewart; James H. Stiers; Doretha
L. Stith; Angela M. Stone; Richard A. Strader; Carla R.
Tory; Amy Wilding; Amy Lynn Williams; Roslyn Williams;
Shannon D. Williams; Tammy C. Williams; Kay W. Willis;
Deborah Wilt; Barry K. Wood; Sharon Wormley; Cavanaugh L.
Wrim, Plaintiffs-Appellants,
and
Stephanie R. Brooks, Plaintiff,
v.
FARM FRESH, INCORPORATED, Defendant-Appellee.
 Nos. 91-2086, CA-90-1607-N.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 3, 1992.
Decided May 22, 1992.
 
 Laurence Gold (James B. Coppess, on brief), Washington, D.C., for plaintiffs-appellants.
 Thomas Joseph Flaherty, Hunton & Williams, Richmond, Va. (Michael P. Oates, Hunton & Williams, Richmond, Va., A.W. VanderMeer, Jr., Sharon S. Goodwyn, Hunton & Williams, Norfolk, Va., on brief), for defendant-appellee.
 Before PHILLIPS and MURNAGHAN, Circuit Judges, and OSTEEN, United States District Judge for the Middle District of North Carolina, sitting by designation.
 PHILLIPS, Circuit Judge:
 
 
 1
 Michelle Shaffer appeals the judgment of the district court dismissing without prejudice her action against Farm Fresh under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. (FLSA). Shaffer, on behalf of herself and 125 consenting class members, challenges the following district court rulings: (1) an order disqualifying Shaffer's counsel, Baptiste & Wilder, under Virginia's conflict of interest rule (Disqualification Order); (2) a statement made by the district court during a hearing that Local 400 of the United Food and Commercial Workers could no longer pay Shaffer's litigation costs (Funding Statement); (3) an order denying Shaffer's request to notify potential class members (Notice Order); and (4) an order dismissing without prejudice Shaffer's action and striking without prejudice the consents of 125 class members (Dismissal Order). We conclude that disqualification was not warranted and that in consequence the district court's further rulings, including dismissal of the action, cannot stand. Accordingly, we reverse on all points and remand for further proceedings.
 
 
 2
 * Shaffer, on behalf of 125 present and former employees of Farm Fresh, brought this action against Farm Fresh under § 16(b) of the FLSA, 29 U.S.C. § 216(b). Section 16(b) enables aggrieved employees to obtain class relief against employers, provided each class member consents to be bound by the judgment. Shaffer alleged that Farm Fresh violated the FLSA by requiring employees to work "off the clock" after employees have "punched out," failing to pay employees overtime wages, requiring employees to work through their breaks without compensation, altering employee time records, and threatening employees who joined this lawsuit.
 
 
 3
 The action originated in contacts between Farm Fresh employees and representatives of Local 400 of the United Food and Commercial Workers (Union). Since 1986, the Union has conducted an organizing campaign to become the exclusive bargaining representative of Farm Fresh employees under the National Labor Relations Act (NLRA), 29 U.S.C. § 141, et seq. Farm Fresh employees and Union representatives discussed Farm Fresh's business practices, and the Union urged its primary outside counsel, Baptiste & Wilder, to represent the employees. The Union agreed to pay all litigation costs, with the expectation that if Shaffer prevailed, the court would order Farm Fresh to pay fees under § 16(b).
 
 
 4
 The action was filed in September of 1990, on behalf of Farm Fresh employees Stephanie Brooks and Michelle Shaffer and a class of similarly situated employees.[1] With the help of the Union, Baptiste & Wilder circulated questionnaires and consent forms to Farm Fresh employees. Along with these materials, the Union distributed flyers discussing the benefits of Union representation and the Union's involvement in the suit.[2]
 
 
 5
 After securing 125 consents, Shaffer moved for court approval of a notice to be sent to a class of 27,000 potential class members. In its Notice Order, the district court denied the request and ordered "that neither the parties nor the Union, nor anyone acting for them, in their interest, or at their behest, conduct any further activity to attempt to recruit additional plaintiffs in this action until further order of the Court." The court took issue with the Union's involvement in securing the first 125 consents, suggesting that the Union may have misled some of the opt-in plaintiffs with its "inflammatory and misleading" flyers. The court also expressed concern that the Union might be pursuing the FLSA action to further its organizational drive.
 
 
 6
 Farm Fresh later moved to disqualify Baptiste & Wilder, arguing that the firm's representation of the Union and Shaffer created a conflict of interest which would deprive Shaffer of adequate representation. The district court entered its Disqualification Order granting the motion in February 1991, 759 F.Supp. 1185. The court characterized the lawsuit as an attempt by the Union to garner support for its organizational drive and found that Baptiste & Wilder's multiple representation violated DR 5-105 of the Virginia Code of Professional Responsibility, which governs conduct of attorneys practicing before the District Court for the Eastern District of Virginia.
 
 
 7
 The court recognized that, while the Union and the Farm Fresh employees share an interest in recovering lost wages, the Union may have additional motives. The court hypothesized a potential conflict if, for instance, Farm Fresh proposed a quick, confidential settlement. While the settlement might be favorable to the employees, a quiet settlement would undermine the Union's interest in publicizing a successful outcome. As a result of its association with Baptiste & Wilder and its financial support of the litigation, the Union could shorten or lengthen the case to coincide with the timing of its organizational drive.
 
 
 8
 Following a hearing in April 1991, the court expressly prohibited the Union from financing the lawsuit. The court entered an order giving Shaffer, Brooks, and the class members one week to secure an attorney willing to accept the case without the Union as a funding source. When the employees failed to do so and Shaffer refused to proceed pro se, the court entered the Dismissal Order, dismissing Shaffer's claim without prejudice, dismissing Brooks' claim with prejudice,[3] and striking without prejudice the opt-in consents filed by the class members. This appeal followed.
 
 II
 
 9
 Because the district court rulings depend on the finding of a conflict of interest in the Disqualification Order, we address that order first. We will then consider the Funding Statement, the Notice Order, and the Dismissal Order.
 
 
 10
 * We review a district court order disqualifying counsel for a conflict of interest de novo. Aetna Casualty & Surety Co. v. United States, 570 F.2d 1197, 1200 (4th Cir.1978). We must determine whether the district court's disqualification order was predicated upon a proper application of applicable ethical principles. Id.
 
 
 11
 Virginia's Disciplinary Rule 5-105(B) provides:
 
 
 12
 A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client....
 
 
 13
 Rules of the Supreme Court of Virginia, Part 6, § II, Canon 5, DR 5-105 (Michie 1991). We have held that disqualification of a litigant's chosen counsel for violation of an ethical canon such as Virginia's DR 5-105(B) may not be rested on mere speculation that a chain of events whose occurrence theoretically could lead counsel to act counter to his client's interests might in fact occur. Aetna, 570 F.2d at 1200-1202. Although this canon proscribes multiple employment not only when counsel's exercise of independent professional judgment "will be" adversely affected, but when it is "likely to be," some stronger objective indicator--even of "likelihood"--than simple judicial intuition is needed to warrant the drastic step of disqualification of counsel. How strong in a particular case is of course a matter of judgment, but we have no doubt that the indicators here are not sufficiently strong; indeed, we see none other than the ever-present threat of human cupidity in all the affairs of life. That obviously cannot suffice.
 
 
 14
 Certainly the district court pointed to no objective indicators that the chain of events it hypothesized might occur were even incipiently underway, or would "likely" occur. The scenario posited by the court instead had simply to assume the complete unfolding of a series of discrete events, no one of which could be more than the basis of speculation at this point: an offer of settlement favorable to plaintiffs which Farm Fresh required be kept confidential; failure of the Union by that time to have organized the Farm Fresh employees; a decision by the Union to influence counsel to reject the favorable settlement in order to further Union interests; and a decision by counsel to default on their ethical obligation in response.
 
 
 15
 This is too attenuated a basis upon which to disqualify counsel. Not only are positive indicators even of the "likely" development of the hypothesized conflict of interest weak or non-existent, powerful safeguards against its actual development manifestly are present. First off, there is the ethical obligation of counsel. That has now been highlighted by Farm Fresh's motion to disqualify which has prompted specific assurances in response. That obligation's force may not be discounted. Beyond that lies the deterrent effect of sanctions--also highlighted by the proceeding--available were counsel nevertheless ever tempted at the Union's insistence deliberately to delay settlement at the expense of its litigation clients. Although a court may not use the threat of sanctions directly to force settlement of a case, Kothe v. Smith, 771 F.2d 667, 669 (2d Cir.1985), § 1927 sanctions may be appropriate against counsel who needlessly and vexatiously "multiples a proceeding" by rejecting a settlement offer that would afford complete relief to his client. Kline v. Wolf, 702 F.2d 400, 405 (2d Cir.1983). Particularly here, with the fat of possible specific ethical misconduct now formally in the fire, it is hard to imagine that it would occur--even if, as we do not suggest, there were any predisposition in that direction.
 
 
 16
 These are practical considerations that we must take into account, along with a party's ability to secure alternative representation, in assessing the propriety of disqualifying counsel on "likely" conflict grounds. Aetna, 570 F.2d at 1200-02. The drastic nature of disqualification requires that courts avoid overly-mechanical adherence to disciplinary canons at the expense of litigants' rights freely to choose their counsel; and that they always remain mindful of the opposing possibility of misuse of disqualification motions for strategic reasons. See Woods v. Covington County Bank, 537 F.2d 804, 813 (5th Cir.1976).
 
 
 17
 Farm Fresh has made, and the district court has accepted as at least a likelihood, the suggestion that counsel might engage in a most egregious, specific form of unethical conduct. For the reasons above given, we conclude that even the likelihood of its actual occurrence is much too speculative on the present record to warrant disqualification. The question of actual or more imminently threatened ethical misconduct resulting from multiple employment of course remains always subject to inquiry.
 
 B
 
 18
 During the April 1991 hearing the district court stated that "under the rules of the Court ... the union can no longer finance this litigation." (App. 78). While the court did not incorporate this in a formal order, the parties both treat the court's Funding Statement as if it were. To the extent that the Funding Statement could be considered part of a binding order, we reverse. Because the district court based the funding prohibition as well as its disqualification order on an interpretation and application of Virginia's canons of professional responsibility, we also review that ruling de novo.
 
 
 19
 We have earlier concluded that Baptiste & Wilder's joint representation of the Union and the Farm Fresh employees could not properly be found on the present record "likely" to cause those counsel to subvert their litigation clients' interests in deference to union influence. For the same reasons, we conclude that it could not properly be found on the present record that the union's contemporaneous organizing drive is "likely" to result in a subversion of Baptiste & Wilder's fair and effective representation of the Farm Fresh employees.[4] Therefore, we reverse the district court's Funding Statement to the extent it was intended to operate as an injunction against Shaffer's use of Union funding for the litigation.
 
 C
 
 20
 We review for an abuse of discretion the district court's Notice Order, which prohibited Shaffer from contacting potential class members. Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 169-70, 110 S.Ct. 482, 486, 107 L.Ed.2d 480 (1989) ("district courts have discretion, in appropriate cases, to implement § 216(b) ... by facilitating notice to potential plaintiffs.").[5]
 
 
 21
 Because we have concluded that neither the disqualification of Baptiste & Wilder nor the prohibition on Union funding of this litigation was warranted at this time, we can identify no reason for continuing the district court's ban on communication between Shaffer and potential class members. The benefits of the class action provisions of § 16(b) "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Id. at 170, 110 S.Ct. at 486. Accordingly, we vacate the district court's Notice Order and remand for lower court approval of an appropriate notice statement and consent form.
 
 D
 
 22
 The claims of Shaffer and the 125 opt-in class members were dismissed because Shaffer was unable to secure alternative counsel and she was unwilling to proceed pro se. That basis for dismissal has now been voided by our conclusion that Shaffer's chosen counsel could not properly be disqualified. We therefore vacate the district court's Dismissal Order with respect to Shaffer and the plaintiff class. The order of course stands as to Brooks, who did not appeal.
 
 III
 
 23
 For the foregoing reasons, we vacate the Disqualification Order and the Funding Statement. Baptiste & Wilder may continue to serve as counsel to Shaffer and the plaintiff class, and the Union may continue funding the litigation. We vacate the Notice Order and remand with instructions for the district court to approve a balanced notice statement and consent form for distribution to the 27,000 potential class members. Finally, we vacate the Dismissal Order with respect to Shaffer and the plaintiff class.
 
 
 24
 VACATED AND REMANDED.
 
 
 
 [1]
 Shaffer originally filed her complaint with the Department of Labor. The Department of Labor advised her to obtain a private attorney. She approached five or six attorneys without success, and when she approached the Union for assistance, the Union told her to contact Baptiste & Wilder
 
 
 [2]
 One flyer read in part:
 Do you have this problem--lots of overtime, with little to show for it on your paycheck?
 You KNOW what your problem is: You need a UNION.
 Another flyer, signed by the President of the Union, read in part:
 You should know by now that a lawsuit has been filed on behalf of Farm Fresh employees to get back the money Farm Fresh has cheated you out of by making you work off the clock.
 Don't be fooled and don't be intimidated by Farm Fresh promises and Farm Fresh threats. Hundreds of employees have already come forward to be plaintiffs in this lawsuit and the number continues to grow.
 REMEMBER--YOU HAVE TO SIGN A CONSENT FORM, IF YOU HOPE TO GET BACK THE MONEY THAT FARM FRESH OWES YOU IF YOU'VE WORKED OFF THE CLOCK.
 The Union has already made a difference--and this is just the beginning.
 
 
 [3]
 Brooks' claim was dismissed because she failed to appear at a scheduled deposition and she failed to respond to the district court's disqualification order. She is not appealing the dismissal
 
 
 [4]
 In view of this conclusion, we need not reach the question whether the Union has a protected first amendment right to fund litigation under the line of cases including Mine Workers v. Illinois Bar, 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967) and NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963)
 
 
 [5]
 Hoffman was brought under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. However, since the ADEA incorporates § 16(b) of the FLSA into its enforcement scheme, the same rules govern judicial management of class actions under both statutes