UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JANE PUMPHREY NES; TANYARD
SPRINGS LIMITED PARTNERSHIP,
            *Plaintiffs-Appellants,*

            v.

ANNE ARUNDEL COUNTY, A chartered
county of the State of Maryland;
DEPARTMENT OF PLANNING AND CODE
ENFORCEMENT, An agency of Anne
Arundel County; JANET OWENS,
Anne Arundel County Executive;                    No. 03-1470
JEROME KLASMEIER, Chief
Administration Officer; ROBERT M.
POLLOCK, Senior Assistant County
Attorney; JOHN G. GARY, JR.,
Former Anne Arundel County
Executive; STEVE COVER, Former
Director; THOMAS ANDREWS, Former
Director; MARK WEDEMEYER, Former
Development Administrator,
            *Defendants-Appellees.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, Senior District Judge.
(CA-01-1605-MJG).

Argued: February 24, 2004

Decided: April 22, 2004

Before WILKINS, Chief Judge, and MOTZ and
TRAXLER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Neil Thomas Proto, SCHNADER, HARRISON, SEGAL & LEWIS, L.L.P., Washington, D.C., for Appellants. Kurt James Fischer, Paula Marie Junghans, PIPER RUDNICK, L.L.P., Baltimore, Maryland, for Appellees. **ON BRIEF:** Steven R. Johnson, SCHNADER, HARRISON, SEGAL & LEWIS, L.L.P., Washington, D.C., for Appellants. Linda M. Schuett, County Attorney, ANNE ARUNDEL COUNTY OFFICE OF LAW, Annapolis, Maryland; Melissa L. Mackiewicz, PIPER RUDNICK, L.L.P., Baltimore, Maryland, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Jane Pumphrey Nes and Tanyard Springs Limited Partnership (collectively Nes) filed this action seeking compensatory and punitive damages against Anne Arundel County, its Department of Planning and Code Enforcement, and certain County officials (collectively "the County"). Nes alleges *inter alia* that the County violated her equal protection rights in connection with her attempts to develop land in Anne Arundel County. The district court granted summary judgment to the County on Nes' equal protection claim and Nes appeals. Finding no reversible error, we affirm.

I.

Nes owns 277 acres of land in northern Anne Arundel County known as Tanyard Springs. Beginning in 1982, she sought to develop

her property as a commercial and industrial project and took various preliminary steps to gain approval of development, including filing early-stage subdivision applications, or sketch plans. Nes requested and received a series of extensions for submittal of a final plan that extended over a number of years. During this time, the scope of the proposed development evolved. One significant change was that Nes applied to have portions of her property rezoned for residential use and received approval for the requested rezoning in 1996. Thus, when she ultimately filed a final infrastructure plat in 1997, Nes's proposal included plans for residential units and constituted a mixed industrial, commercial, and residential subdivision.

The County requires that developers demonstrate that public facilities, like wastewater systems and public schools, will be adequate to support a proposed development in order to receive approval for a final development plan. Anne Arundel County, Md., Code §§ 2-409 - 2-419 (1985 & Supp. 2003). Thus, one major step in securing approval for a project is to reach an adequate public facilities ("APF") agreement with the County, which may often require that the developer commit to build or improve existing public facilities.

From the time that Nes submitted her initial sketch plans, the County identified certain public facilities that needed improvement to support a development at Tanyard Springs. In seeking extensions of time to submit a final plan, Nes indicated her "desire to resolve several outstanding Adequacy of Facilities issues prior to proceeding with final plans." However, after Nes received permission to rezone a good portion of her property for residential use in 1996, she met with County officials to "establish the final process for the review and approval" of the Tanyard Springs development, including the APF agreement; thereafter, negotiations regarding the APF agreement "intensified."

One issue of concern was the adequacy of wastewater facilities, which the County determined would have to be augmented through the construction of a sewage pumping station. As early as 1990, the County indicated that Nes had to cooperate with CSX Corporation, a developer that owned and proposed development on land adjacent to Tanyard Springs, to construct one pumping station to support both proposed developments. Nes attempted, to no avail, to work with

CSX to construct the required pumping station on CSX's property. Ultimately, Nes' final APF agreement, signed in 1998, provided that Nes would design a pumping station to be built on her property, which the County would then construct, at its expense.

The final APF agreement did not, however, resolve another issue of concern relating to the adequacy of public facilities — the ability of neighborhood schools to absorb the additional students generated by Nes' proposed residential development. An initial draft of the APF agreement prepared by Nes and discussed with County officials incorporated Nes' expectation, consistent with County practice at that time, that she pay a fee to compensate for any shortfall in school adequacy. But, prior to finalization of the APF agreement, County officials informed Nes that the County would no longer agree to waive school adequacy requirements in return for payment of a fee and that she must, instead, apply for a statutory hardship waiver. Nes applied for the statutory waiver, which was denied, with the denial upheld by the County Board of Appeals. Thus, Nes was unable to meet the school adequacy requirement, a prerequisite for final approval of the Tanyard Springs development.

Nes then filed this action, alleging in relevant part that the County denied her equal protection of the laws by imposing development conditions on her not imposed on other developers. Specifically, Nes argues that the County did not compel other developers to (1) cooperate with and locate sewage pumps on another landowner's property or (2) satisfy the stringent statutory hardship showing to meet the school adequacy requirement.

II.

When Nes commenced this action on June 1, 2001, attorneys practicing with the firm Verner, Lipfert, Bernhard, McPherson & Hand, Chartered ("Verner") represented Nes. In March 2002, Nes' counsel left Verner and joined a new firm, Schnader, Harrison, Segal & Lewis ("Schnader"). Nes continued to be represented by her original counsel, only through Schnader. Thereafter, in August 2002, the County, which had from the outset been represented by Piper Rudnick, LLP ("Piper"), moved for summary judgment seeking dismissal of Nes'

equal protection claim. On September 23, 2000, Verner merged with Piper.

Nes then moved to have Piper disqualified on the ground that when Verner merged into Piper, Verner's conflicts (specifically, its prior representation of Nes) were imputed to Piper, thereby precluding Piper from continuing to represent the County. The district court denied Nes' motion to disqualify Piper because it found that Piper put in place safeguards sufficient to protect Nes' interests and comport with the standard set forth in Rule 1.10(b) of the Maryland Code of Professional Responsibility.

After denying Nes' disqualification motion, the district court considered the County's motion for summary judgment on Nes' equal protection claim. The court determined that Nes was a "class of one" and that to establish a prima facie case, she must show that (1) the County treated her differently than other, similarly situated individuals; (2) the differential treatment was intentional; and (3) the differential treatment was not rationally related to a legitimate government interest.

The district court first rejected Nes' claim with regard to the construction and siting of the sewage pump. The court reasoned that the County had an interest in limiting the number of pumping stations, which it furthered by requiring developers to cooperate in building pumping stations and that the County applied this policy equally to Nes and other similarly situated developers. The court further reasoned that the County's initial focus on having the pumping station built on CSX's property was justified because the CSX site was located at a lower elevation than the Tanyard Springs property.

The district court also rejected Nes' claim with regard to school adequacy. It ruled that, although the County did at one point permit some developers to satisfy the school adequacy requirement early in the application process by negotiating fee waiver agreements, it only made this expedited process available to developers who applied for and were granted Planned Unit Development ("PUD") status. Because Nes neither applied for nor received PUD status, the court concluded that she could not establish disparate treatment.

The district court similarly ruled that Nes failed to demonstrate that she was subjected to disparate treatment because the County did not process her school adequacy requirement pursuant to its broader fee waiver policy, which supplanted the PUD policy, pursuant to which non-PUD developers could enter into fee waiver agreements to satisfy the school adequacy requirement. The court concluded that Nes' development plans were not sufficiently far along while the fee waiver policy was in effect for school adequacy to be determined and for an agreement relating thereto to be signed. The district court further noted that the County discontinued the fee waiver policy in 1997, so that by the time Nes applied for a waiver pursuant to the hardship exception in 1998, the County no longer granted new waivers, except in rare and unusual circumstances. Thus, the court concluded that the County treated Nes in a manner consistent with its policy and did not treat her differently than other similarly situated landowners.

### III.

After carefully considering the record, the briefs, and the applicable law, and having the benefit of oral argument, we conclude that the district court properly granted the County summary judgment on Nes' equal protection claim and properly denied Nes' disqualification motion. We affirm for the reasons stated by the district court, and engage in further discussion only to add one point.

In addition to the reasons offered by the district court, we note that the County filed its motion for summary judgment on August 28, 2002 and the merger that forms the basis for Nes' disqualification motion did not occur until September 23, 2002. The County filed only a limited brief on the summary judgment motion after the merger date; this undisputed fact, therefore, constitutes an additional "practical reason[ ]" why the merger did not taint the summary judgment proceedings in a manner requiring disqualification. *See Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992).

### IV.

Accordingly, the judgment of the district court is in all respects

*AFFIRMED.*