Antonio PARRILLA et al, Plaintiffs,

v.

ALLCOM CONSTRUCTION &
INSTALLATION SERVICES,
LLC, Defendant.

Case No. 6:08–cv–1967–Orl–31GJK.

United States District Court,
M.D. Florida,
Orlando Division.

Feb. 24, 2010.

**1348**

K.E. Pantas, Budgen Law Group, Orlando, FL, for Plaintiffs.

Mark O. Cooper, O'Neill, Liebman & Cooper, PA, Orlando, FL, for Defendant.

## ORDER

GREGORY A. PRESNELL, District Judge.

This matter came before the Court without oral argument upon review of the entire record and consideration of the parties' Joint Motion to Approve FLSA Settlement (Doc. 78).

### I.

On November 20, 2008, the named plaintiff, Antonio Parrilla, and other similarly situated employees (the "pre-certification Plaintiffs"), brought suit pursuant to the Fair Labor Standards Act of 1938 (the "FLSA"). *See generally* 29 U.S.C. §§ 201 to 219. The Complaint was specifically styled as a "collective action," and the preamble asserted that "Plaintiff . . . and others," by and through counsel, were suing the Defendant. The Complaint also asserted that the named plaintiff was a "representative" of other employees and was "acting on behalf of their interests;" that other employees "should be notified of this action;" and that if other employees were not so notified, they would be "unable to secure compensation to which they are entitled." (Doc. 1, ¶¶ 14, 16 and 17).

Consistent with the allegations in the Complaint, the pre-certification Plaintiffs moved the Court to certify this case as a collective action and sought authorization to send Court-supervised notice to similarly situated employees. (Doc. 16). Defendant opposed the motion, contending that the named Plaintiff was an exempt independent contractor and not entitled to relief under the FLSA. (Doc. 17). Following a one-day bench trial on July 23, 2009, the Court ruled that the named Plaintiff was Defendant's employee and not an exempt independent contractor. (Doc. 64).

Thereafter, the pre-certification Plaintiffs renewed their motion to certify a collective action, arguing, *inter alia*, that Defendant had "engaged in a scheme designed to thwart the requirements of the FLSA" and that other similarly situated employees, who were economically dependent on Defendant, desired to opt-in. (Doc. 23 at 1–2). In reliance on those representations, the Court granted the motion, prepared a notice advising similarly situated employees of their right to opt in, directed Defendant to disclose the names and addresses of certain employees, and authorized Plaintiffs' counsel to mail out the Court's notice. (Doc. 69).[1]

After holding "frank and candid discussions" with Defendant's counsel, Plaintiffs' counsel decided not to send the notice or to otherwise apprise any of the similarly situated employees of the existence of this litigation and their right to opt in. (Doc. 76 at 2). Instead, counsel agreed to settle this matter amongst the named and pre-certification parties only. (Docs. 76 at 2 and 78). Because "Defendant would more than likely be forced to file bankruptcy [sic] if a substantial judgment was en-

tered," the parties tentatively agreed that only the pre-certification Plaintiffs should receive 100% of their lost wages and liquidated damages. (Doc. 76 at 2–3).[2]

After the Court expressed some concern about whether potential opt-ins could be prejudiced by the parties' settlement (Doc. 77), the parties amended the terms of their agreement. (Doc. 78). According to their new proposed settlement, the pre-certification Plaintiffs will receive approximately $38,477 in lost wages,[3] to be paid in 24 monthly installments, while Plaintiffs' counsel will immediately receive $30,000. (Doc. 78 at 2–3). In exchange, the pre-certification Plaintiffs have agreed not to disclose the settlement. (Doc. 78–1 at 1, ¶ 7).[4] Defendant's other employees—who never received notice of the suit—will receive nothing and, assuming they eventually do learn about this case, may be time-barred[5] or forced to pursue their lost wage claims in bankruptcy court.

## II.

### A

■ Based on the present record, the manner in which this case has been con-

---

1. The Court's September 14, 2009 Order "authorized" Plaintiffs' counsel to send the notice—it did not explicitly order counsel to do so. Nevertheless, the Court set an opt-in deadline of November 6, 2009, and it was, therefore, contemplated that Plaintiffs' counsel would promptly send the notice after receiving the list of Defendant's employees. It was not until nearly four months later, however, that Plaintiffs' counsel informed the Court that he had decided not to send out the notice (Doc. 76).

2. The parties also apparently agreed to dismiss one of the pre-certification plaintiffs, Evilio Mesa, from the case. Because Mesa "appeared to have abandoned his claim" and could not be reached by Plaintiff's counsel, Defendant agreed to set his deposition. (Doc. 76 at 3). When Mesa failed to appear, Defendant filed its unopposed motion to dismiss Mesa's claim (Doc. 74).

3. Plaintiffs agreed to drop their claim for liquidated damages.

4. Given the public nature of FLSA claims, this Court has consistently rejected efforts to keep FLSA settlements confidential. Despite that practice, paragraph seven of the parties' settlement agreement purports to bind the named and pre-certification Plaintiffs to a pact of secrecy.

5. Under the FLSA, the statute of limitations on prospective plaintiffs' claims is not tolled by the filing of a collective action complaint or the entry of an order certifying a collective action. 29 U.S.C. § 256; *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1107 (11th Cir.1996). The clock will only stop running for a particular plaintiff if he files a written consent to opt-in (or, of course, a separate complaint). *Id.*

ducted appears to be an abuse of aggregate litigation. The pre-certification Plaintiffs clearly brought and, at least initially, litigated this case as a collective action—not in an individual capacity. While the practice of styling FLSA complaints as "collective actions" and then failing to move for collective certification has perhaps grown commonplace, here the pre-certification Plaintiffs took the next step by actually moving for certification. In doing so, they used the imprimatur of the Court to up the ante and augment Defendant's potential liability. In response, Defendant vigorously contested liability and certification. When those battles were lost, however, Defendant approached Plaintiffs' counsel with a settlement that, for all intents and purposes, "sells out" the prospective plaintiffs. *Kaufman v. Am. Exp. Travel Related Servs. Co.*, 264 F.R.D. 438, 448–49 (7th Cir.2009) (citation omitted). Indeed, after sitting on the Court's notification order for nearly four months, the pre-certification Plaintiffs ultimately agreed to keep quiet in exchange for receiving 100% of their wage claims. Given Defendant's precarious financial position, the addition of more claimants can apparently lead to only one of two results: (1) each claimant will be forced to settle for some fraction of his claim; or (2) Defendant will be forced into bankruptcy. By jettisoning the claims of their fellow employees—without whose threatened-joinder, the value of the settlement may have been significantly less—the named Plaintiffs stand to keep a bigger piece of the pie for themselves and can avoid what may have otherwise turned out to be a Pyrrhic victory.

## B

■ Federal courts have a duty to examine the course of litigation and to ascertain whether the adjudication of litigants' rights comports with due process. *Hansberry v. Lee*, 311 U.S. 32, 40, 61 S.Ct. 115, 85 L.Ed. 22 (1940). This is particularly true in aggregate litigation, where representatives of a class and their attorneys have interests that may not necessarily be aligned with those whom they are deemed to represent. *Id.* at 32, 61 S.Ct. 115; *Grigsby v. N. Miss. Med. Ctr., Inc.*, 586 F.2d 457, 462 (5th Cir.1978); *Guerine v. J & W Inv., Inc.*, 544 F.2d 863, 864–65 (5th Cir.1977); *see also* Principles of the Law of Aggregate Litigation § 1.05 cmt. c (Proposed Final Draft, 2009). It is also true where the decision to certify a class can itself have significant repercussions. *See, e.g., In re Rhone–Poulenc Rorer, Inc.*, 51 F.3d 1293, 1298 (7th Cir.1995) (noting, *inter alia*, that the decision to certify a class action often creates an "intense pressure to settle," especially where a defendant may be faced with bankruptcy if it decides to litigate the merits against the entire class and loses).

■ Given this potential for abuse, "a district court has both the duty and broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). These principles apply not only in the context of class actions governed by Rule 23 but also in collective actions brought under the FLSA. *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 171, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).[6] Within the context of the FLSA,

---

6. *Hoffmann–La Roche, Inc.* was brought under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* 493 U.S. at 167, 110 S.Ct. 482. However, since the ADEA incorporates § 16(b) of the FLSA into its enforcement scheme, the same rules govern the judicial management of collective actions under both statutes. *See, e.g., Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 147 n. 5 (4th Cir. 1992).

in particular, the court "has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way" and to ensure that employees receive "accurate and timely notice concerning the pendency of [a] collective action, so that they can make informed decisions about whether to participate." *Id.*

■ Similarly, once the court has ordered that a collective action be certified and prepares a notice for the benefit of similarly situated employees, counsel for the representative Plaintiff incurs, at a minimum, a duty to ensure that the notice is sent (or, alternatively, an obligation to timely move for de-certification). While collective actions are unique (if not antiquated) in that, unlike Rule 23's opt-out provisions, no person can become a party plaintiff unless he affirmatively "opts in" by filing his written consent, *LaChapelle v. Owens–Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir.1975), counsel must still "act for the benefit of all parties and represented persons, including those who are not individual clients with whom the lawyer has a direct contractual relationship." Principles of the Law of Aggregate Litigation § 1.05 cmt. f. Indeed, having leveraged the expected value of the litigation by certifying the case as a collective action, counsel should "take all steps that have reasonable potential to make one or more parties or represented persons better off *without harming others.*" *Id.* (emphasis added). Those steps clearly do not include waiting nearly four months and failing to send the Court's notice without attempting to de-certify the class and then cutting a deal for

the pre-certification plaintiffs that could harm similarly situated employees.

Nevertheless, Plaintiffs' counsel argues that because no opt-ins were ever filed, he has no authority (or obligation) to represent others who have yet to appear. (Doc. 80 at 2). At first blush, there appears to be support for that proposition. In *Mackenzie v. Kindred Hospitals East, LLC,* for instance, the Court observed:

> [U]nlike a Rule 23 class action where the rights of class members may be determined by the representative plaintiff's actions, resolution of the plaintiff's FLSA claim will not compromise the right of any other employee to file suit against the defendant since no one has opted into this lawsuit.
>
> [This distinction] also answers the plaintiff's argument that he has a fiduciary or ethical duty to prosecute this case to protect the rights of potential plaintiffs. Since no consents have been filed by anyone opting into this case, there is no other individual for the plaintiff or his lawyer to represent. Absent representation, there is no basis for finding that some duty exists on the part of the plaintiff or his lawyer toward individuals that will not be bound in any way by the outcome of this lawsuit.

276 F.Supp.2d 1211, 1216 (M.D.Fla.2003).

*Mackenzie* is inapposite, however, for several reasons. First, the plaintiff in *Mackenzie* failed to identify even one potential opt-in who was similarly situated to himself. *Id.* at 1213. Second, the plaintiff moved for collective certification in the face of a Rule 68 offer of judgment that effectively "picked off" his claim and mooted the case.[7] *Id.* at 1217. And third, the

---

7. The Fifth Circuit has recently curtailed the use of this tactic. *See Sandoz v. Cingular Wireless, LLC,* 553 F.3d 913, 918–919 (5th Cir. 2008) (noting that, a "ruling that a defendant *always* can 'pick off' a named plaintiff's FLSA claims before the plaintiff has a chance to

certify the collective action would obviate one purpose of the collective action provision," and holding that a motion for collective certification can relate back to the filing of the complaint) (citation omitted).

Court never certified the case as a collective action. *Id.* at 1213.[8] In contrast, here the pre-certification Plaintiffs made an affirmative showing that there were similarly situated employees, sought and received collective certification from the Court, decided not to notify similarly situated employees without moving to de-certify the collective action (despite the passage of nearly four months after the Court's Order), and then moved the Court to approve a settlement that will benefit only the pre-certification Plaintiffs and harms other employees.

### C

■■ The decision to certify a collective action in an FLSA case is discretionary. *Huff v. DeKalb County, Ga.,* 516 F.3d 1273, 1282 n. 9 (11th Cir.2008) (citation omitted). When counsel successfully invokes that discretion, however, he triggers the court's duty to ensure that accurate and timely notice is given to similarly situated employees so that they may make an informed decision about whether to join the case. Having done so, counsel himself has also incurred a duty to ensure that the court's notice is sent and that his subsequent steps in the litigation will not have the effect of harming potential opt-in plaintiffs. Counsel may, of course, always decide to reverse course and timely seek to de-certify the class. What he cannot do, however, is fail to send the Court's notice

and utilize the Court's certification order to increase the value of only the named and pre-certification plaintiffs' claims to the detriment of other similarly situated employees.

### III.

For the foregoing reasons, it is **ORDERED** and **ADJUDGED** that:

1. The parties' Joint Motion to Approve FLSA Settlement (Doc. 78) is **DENIED** without prejudice.

2. Given the procedural posture and circumstances of this case, the Court will not entertain a motion to de-certify the class. Accordingly, Plaintiffs' counsel shall expeditiously send the Court's notice via certified mail, return receipt requested, to similarly situated employees who currently work or performed work for Defendant in the period beginning November 20, 2005 through today. Plaintiff's counsel shall use the revised "Notice of Collective action" and "Declaration of Consent to Join" forms attached to the instant Order;

3. By no later than **Friday, March 12, 2010,** Plaintiffs' counsel shall file a status report with the Court detailing his compliance with Paragraph 2, *supra,* including a list of all individuals to whom the notice was sent and proof of delivery to same; and

---

**8.** The pre-certification Plaintiffs also rely on *Perez v. Avatar Properties, Inc.,* Case No. 06:07–CV–792–ORL–28DAB, 2008 WL 4853642 (M.D.Fla. Nov. 6, 2008). That reliance is similarly misplaced. There, the pre-certification plaintiffs and defendant reached a global settlement before moving the Court to certify a collective action. *Id.* at *2. The settlement applied not only to the pre-certification plaintiffs but also to any potential opt-in plaintiffs, despite the fact that no opt-ins had been filed with the Court before the settlement had been reached. *Id.* In addition to

finding that the case was moot, the Court observed: "the parties have put the proverbial cart before the horse in settling all claims, before the representative plaintiff has any indication as to exactly what those claims are and how many others he will actually represent." *Id.* at *4. Here, however, the pre-certification Plaintiffs and Defendant *do* know what other potential claims there are, or at least have a strong sense that, if they those claims are asserted, the settlement value of their own claims may diminish because Defendant may be forced into bankruptcy.

4. The deadline for filing declarations of consent to join shall be Friday, April 2, 2010.