# CIRCUIT COURT OF ISLE OF WIGHT COUNTY

Thomasene P. Gay

v.

Luihn Food
Systems, Inc.

February 7, 2001

Case No. (Law) CL00-121

BY JUDGE D. ARTHUR KELSEY

The plaintiff, Thomasene Gay, filed this civil action seeking damages for personal injuries she allegedly sustained at a KFC Taco Bell restaurant in August 1998. Before filing suit, Gay claims she contacted the law firm of Stackhouse, Smith & Nexsen about the possibility of representing her in this case. Gay contends (and the firm denies) that during this dialogue she revealed confidential information about her claim. The firm declined the representation and later made an appearance on behalf of the defendant. Contending that the firm violated ethical rules by representing her opponent, Gay filed a motion to disqualify. For the following reasons, the Court denies the motion.

Gay alleges that on August 20, 1998, she entered the KFC Taco Bell restaurant in Smithfield and slipped and fell on a "wet and slippery" area of the floor. *See* Motion for Judgment ¶ 5, at 1. At that time, Gay worked as a technician for Smithfield Packing Company at its in-house medical clinic. Part of her duties included working with employees injured on the job.

William W. Nexsen, a partner with Stackhouse, Smith & Nexsen, handled the defense of workers' compensation claims for Smithfield Packing. The firm had represented the company for about twenty years. Given this past relationship, Gay contacted Nexsen in hopes that he would represent her in filing a claim against KFC Taco Bell. Gay initially spoke with Nexsen over

the phone. She later spoke briefly with him while Nexsen was at Smithfield Packing on other business.

Gay recalls informing Nexsen about the details of her claim, including the exact location of the slip and fall, the time and date of its occurrence, the presence or absence of warning signs, the identity of an eyewitness, her specific injuries, and the resulting need for surgery. Gay also remembers Nexsen telling her that he would "help walk her through" the claim process and that "she did not need a lawyer." Gay claims she nonetheless insisted on retaining a lawyer and asked Nexsen for a referral. Nexsen advised Gay to contact Peter G. Decker, Jr., of Decker, Cardon, Thomas, Weintraub & Neskis.

Nexsen has a completely different recollection. He remembers Gay telling him generally of her slip-and-fall accident but insists that Gay provided no details of any kind and no information that could be arguably characterized as confidential. Nexsen said he told Gay in the first conversation that his firm, as a matter of policy, did not represent employees of its corporate clients. Nexsen also denies ever advising Gay that he would "help walk her through" the claim process or that she did not need a lawyer. To the contrary, Nexsen asserts, he informed Gay that she should retain a personal injury attorney and suggested that she employ Pete Decker. Nexsen also denies ever learning anything about Gay's alleged injuries or any specific medical care she received. Nexsen says he does not now know, nor has he ever known, what medical diagnosis Gay received or what specific treatment Gay has been provided. Finally, Nexsen remembers a brief, passing exchange of pleasantries during one of his visits to Smithfield Packing on other matters. Here again, Nexsen insists, Gay said nothing of significance to him during this chance encounter.

Gay also claims that during a later telephone call with an associate at Nexsen's firm she provided the same detailed, confidential information previously passed on to Nexsen. The associate remembers the conversation, but flatly denies receiving any such information.

In July 2000, Gay filed a Motion for Judgment in the Isle of Wight Circuit Court. The operator of the KFC Taco Bell retained Charles L. Downs, Jr., of Stackhouse, Smith & Nexsen to file responsive pleadings and to defend its interests. When Gay learned that a member of Nexsen's firm represented her opponent, she filed a "Motion to Remove Counsel for Defendant" on the ground that "Stackhouse, Smith & Nexsen as counsel for defendant" has violated the "attorney/client privilege" in a manner that has "substantially prejudiced" the plaintiff.

In Virginia, a lawyer must withdraw from a representation whenever "the representation will result in violation of the Rules of Professional Conduct or other laws." Va. Rule of Professional Conduct 1.16(a)(1). Gay argues that Nexsen has violated Rule 1.6(a), which forbids lawyers from revealing to any person "information protected by the attorney-client privilege under applicable law or other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client . . . ." To complete the analytical circuit, Gay's argument relies on the principle of imputed disqualification. *See* Va. Rule of Professional Conduct 1.10(a).

Before addressing Gay's specific arguments, several initial observations must be made. Under some circumstances, disqualification of a lawyer can directly impair the rights of others. If innocent of any wrongdoing himself, the litigant which has hired an ethically compromised lawyer should not be penalized by his lawyer's errors unless the litigant stands to somehow gain from them. This limitation on the use of the disqualification remedy does not weaken the ethical code with an attitude of half-hearted enforcement. It simply redirects the primary task of enforcement to the Virginia State Bar in those cases where the alleged violation does not create a competitive imbalance in the adversarial process or call into question the fundamental fairness of the judicial system.

Given these concerns, the "drastic nature of disqualification requires that courts avoid overly-mechanical adherence to disciplinary canons at the expense of litigants' rights freely to choose their counsel . . . ." *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992). The Fourth Circuit has explained the rationale for this circumspect approach this way:

> It behooves this court, therefore, while mindful of the existing Code, to examine afresh the problems sought to be met by that Code, to weigh for itself what those problems are, how real in the practical world they are in fact, and whether a mechanical and didactic application of the Code to all situations automatically might not be productive of more harm than good, by requiring the client and the judicial system to sacrifice more than the value of the presumed benefits.

*Aetna Cas. & Sur. Co. v. United States*, 570 F.2d 1197, 1202 (4th Cir. 1978) (citation omitted).

If the truth be told, disqualification can itself be a weapon in the adversarial contest intended to accomplish strategic litigation goals of the

requesting party, like retiring from the scene the very lawyers in whom an opponent has the most confidence, or distracting an opponent with a costly and potentially embarrassing pretrial diversion, or simply launching a thinly veiled *ad hominem* attack, all under the cover of a dutiful effort to reprove an ethically challenged lawyer. Only the naive would discount the possibility of such motivations infecting modern litigation. For these reasons, courts should "always remain mindful" of the "possibility of misuse of disqualification motions for strategic reasons." *Shaffer*, 966 F.2d at 146 (citing *Woods v. Covington County Bank*, 537 F.2d 804, 813 (5th Cir. 1976)).

Given the potential for abuse, a litigant seeking to disqualify an opponent's lawyer must hurdle a "high standard of proof" to be successful. *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724, 729 (E.D. Va. 1990) (citing *Government of India v. Cook Industries, Inc.*, 569 F.2d 737, 739 (2d Cir. 1978), and *Evans v. Artek Systems Corp.*, 715 F.2d 788, 794 (2d Cir. 1983)). Disqualification requests "based on imagined scenarios of conflict" can never satisfy this standard. *Id.*; *see also Richmond Hilton Assocs. v. City of Richmond*, 690 F.2d 1086, 1089 (4th Cir. 1982) (disqualification limited to "actual or likely" conflicts); *Aetna*, 570 F.2d at 1201 (disqualification inapplicable where "practical considerations" eliminate any real impact of the alleged conflict).

In this case, Gay argues that (i) she disclosed detailed, confidential information to Nexsen while seeking to employ his services, and (ii) the attorney-client privilege protects confidential communications from a prospective client. Nexsen denies both assertions, claiming to have received no details of any kind about Gay's claim and to have learned nothing that arguably could be characterized as confidential. Nexsen also contends that no attorney-client representation ever came into existence, and thus, no allegedly confidential communications by Gay should be deemed protected in any event.

We must first settle the legal issue. Though not without some dissent,[1] most courts, bar disciplinary committees, and commentators agree that a lawyer need not be actually engaged as an attorney (and thus acquire a contractual attorney-client relationship) for a confidential communication to be protected by the attorney-client privilege. As one leading authority on the

---

[1] The Court acknowledges that *Romenesko v. Romenesko*, 25 Va. Cir. 220 (Albemarle County 1991), held that under Virginia law "communications made before [an attorney-client] relationship has been established are not privileged." Given the lack of any persuasive rationale for this proposition, as well as the weight of authority supporting the opposite conclusion, it appears *Romenesko* has little precedential vitality.

subject explains, communications "from a *prospective* client to a lawyer can be privileged, even if the contact never blossoms into an actual attorney-client relationship." Thomas E. Spahn, *Virginia's Attorney-Client Privilege and Work Product Doctrine*, ¶ 2.202, at 16-18 (4th ed. 1999) (emphasis in original); *see also Restatement (Third) of Law Governing Lawyers*, § 120, comment c, at 362, and § 122, comment d, at 381 (Proposed Final Draft No. 1, 1996).

A long line of Legal Ethics Opinions issued by disciplinary committees of the Virginia State Bar likewise recognizes that a prospective client's "initial consultation with an attorney creates an expectation of confidentiality which must be protected by the attorney even where no attorney-client relationship arises in other respects." Va. Legal Ethics Op. 1546 (Aug. 12, 1993); *see also* Va. Legal Ethics Ops. 1697 (June 24, 1997); 1642 (June 9, 1995); 1638 (April 19, 1995); 1633 (June 9, 1995); 1613 (Jan. 13, 1995); 1453 (March 24, 1992); 1189 (Nov. 17, 1988); 1039 (Feb. 17, 1988); 949 (July 8, 1987); 629 (Nov. 13, 1984); 452 (Apr. 12, 1982); 318 (June 6, 1979). An attorney, therefore, has a "duty to keep confidential those consultations that occur outside formal attorney-client relationships which nonetheless create an expectation of confidentiality." Va. Legal Ethics Op. 1642 (June 9, 1995).

Applying this rule, courts frequently point out that no potential client "could ever safely consult an attorney for the first time . . . if the privilege depended on the chance of whether the attorney after hearing the statement of facts decided to accept employment or decline it." *In re Auclair*, 961 F.2d 65, 69 (5th Cir. 1992); *see generally Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 405 (D. Kan. 1998); *Perkins v. Gregg County*, 891 F. Supp. 361, 364 (E.D. Tex. 1995). Based on this basic premise, with few exceptions, "the overwhelming view of the courts and commentators" is that a prospective client's statements "made in an attempt to hire a lawyer, even if unsuccessful, should be privileged." 24 Charles A. Wright and Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence*, § 5479, at 235 (1986).

Even though her status as a mere prospective client does not doom Gay's plea for the protection of the attorney-client privilege, she still must demonstrate that she disclosed to Nexsen confidential information which, if in the hands of the defendant, might somehow prejudice her position or stain the integrity of these proceedings. Having heard testimony from both Gay and Nexsen, the Court finds that Gay's recollection exaggerates the level of detail, the number of topics, and the allegedly confidential nature of the statements she made to Nexsen. At best, a credible synthesis of the testimony persuades the Court only that Gay advised Nexsen of her accident in the most general terms and received in response Nexsen's suggestion that she should consider

employing Pete Decker to represent her. Gay has failed to carry the burden of persuasion on this critical point, and thus, she cannot satisfy the "high standard of proof," *Tessier*, 731 F. Supp. at 729, required to support a motion to disqualify. The Court finds, therefore, that Gay did not disclose confidential information to Nexsen that would qualify for the protection of the attorney-client privilege. The Court likewise finds that Gay communicated no confidential information to Nexsen's associate. *See supra.*

A closing comment must be made about the appearance-of-impropriety concept, often employed in near-miss cases involving allegations of ethical misconduct. This principle takes into account subjective impressions about, as well as objective proof of, questionable behavior by lawyers. And rightly so for the integrity of the legal profession, if it is to have an enduring recognition by the public, depends both on the perception as well as the reality of whole-hearted obedience to ethical principles. The appearance-of-impropriety concept serves this goal by drawing the ethical line and then backing off ten paces any attorney at risk of crossing the line.

The appearance-of-impropriety concept, however, plays no useful role in the factfinding process. A judge cannot set aside the difficult task of deciding between conflicting versions of the truth and substitute in its place a rule that permits an allegation of impropriety, no matter how insistently advanced, to carry a presumption of correctness. If it worked that way, every lawyer charged with wrongdoing would be tacitly presumed guilty — hardly an effective method of fostering the perception of propriety. Put another way, it is only after a court resolves conflicts in the evidence, when the accused lawyer's exact position in relation to the ethical boundaries can be determined, that the appearance-of-impropriety concept should be employed. And, even then, it still must be decided whether — in the interest of avoiding destructive perceptions — the lawyer should be pushed back from coming too close to an ethical incursion. In this case, given the Court's findings of fact, Nexsen neither committed any actual impropriety nor is he at risk of appearing to have done so.

In sum, confidential communications from a potential client deserve protection both under the ethical rules as well as the prudential principles governing disqualification. In this case, however, the Court finds that Gay did not provide any information to Nexsen that could be fairly characterized as a confidential communication. The Court, therefore, denies Gay's motion to disqualify Stackhouse, Smith & Nexsen from representing the defendant in this case. It is so ordered.