# CIRCUIT COURT OF THE CITY OF NORFOLK

Arriba Corporation

v.

Robert C. Bostic et al.

January 17, 2002

Case No. (Chancery) CH01-1413

BY JUDGE EVERETT A. MARTIN, JR.

On August 9, 2001, Vandeventer Black ("Vandeventer") filed a seventeen count, fourteen page bill of complaint on behalf of the plaintiff ("Arriba") against Robert C. Bostic, his wife, and five other affiliated defendants. The plaintiff alleges in the bill of complaint that Bostic is one of its former officers and directors and that he was responsible for the management of several of its construction projects.

The plaintiff also alleges, *inter alia,* that Bostic has misappropriated its monies for his own benefit or for the benefit of other defendants he controls and that he has engaged in self-dealing for his own benefit while an officer and director of Arriba. The plaintiff seeks a variety of relief, including reimbursement of allegedly misappropriated funds, an accounting, the imposition of a constructive trust on Bostic's assets, and compensatory, treble, and punitive damages. It also seeks a declaratory judgment that Bostic is not one of its stockholders, that a certain promissory note is of no legal effect, and that transfers among the defendants are void.

On August 31, Bostic filed a motion to disqualify Vandeventer based on Bostic's previous relationship with Vandeventer. The motion to disqualify, Vandeventer's response, the exhibits provided, and the testimony heard on October 24 establish the previous relationship between Vandeventer and Bostic.

### Abante Corporation

Bostic is the sole officer, director, and stockholder of Abante Corporation, which was formerly his principal business activity. In late 1997, Vandeventer began to represent Abante, doing about 90% of its legal work until August of 2001. Mr. Neil S. Lowenstein performed most of this work. Abante paid over $200,000 in legal fees to Vandeventer during the course of their relationship. None of the legal work Vandeventer performed for Abante is related to this suit.

During the course of its representation of Abante, Vandeventer did not perform personal legal work for Bostic, such as the preparation of a will; however, Bostic testified that he discussed personal and other business matters with Vandeventer attorneys. He gave no particulars, but he was not challenged about this on cross-examination. It is to be expected that the sole owner of a small corporation will tell the corporation's attorney about his personal business. Actions the corporation takes may have a significant effect on, among other things, the owner's financial solvency and tax liability. I find that such conversations did occur.

It appears the last work Vandeventer performed for Abante was the collection of $95,000 due Abante on the Family Services-Little Creek claim. As late as 3:42 p.m. on August 8, 2001, Lowenstein was communicating with Bostic about the collection and disbursement of these funds. It further appears that about $64,500 of the money received was used to pay fees Abante owed Vandeventer. The very next day Lowenstein filed this suit.

### THR Enterprises

Vandeventer prepared a stockholders' agreement and a consulting agreement for THR Enterprises. Mr. McGann testified that Mr. DeLauney and Bostic called him about the preparation of these agreements and that, upon their completion, he sent them to Bostic. He further testified that the only question he received from Bostic was the method of the calculation of the percentages in the stockholders' agreement and that Bostic's name was not on any agreement Vandeventer prepared. However, Bostic introduced Exhibits B and D showing he was a signatory to the agreements. Either Mr. McGann has forgotten revising

the agreement or the principals of THR revised them. In any event, Mr. Matthews conceded at the hearing that THR has nothing to do with the pending suit.

## Arriba

Although Bostic's interest in Arriba is in dispute in this suit, a dispute arose between Bostic and the principals of Arriba in the spring of 2001. Bostic and DeLauney were the representatives of Arriba with whom Vandeventer usually dealt.

In January of 2001, Bostic contacted Vandeventer about the preparation of a hold harmless agreement to which he, his wife, Arriba, and North Forty Aspen were to be parties. The agreement was to protect Arriba on the North Forty project. Bostic testified he called Lowenstein on his own behalf and that of Arriba; he later testified he called on behalf of Arriba. He testified that he assumed Lowenstein was working both for him and for Arriba.

For reasons that were not made plain to me, but no doubt are understood by counsel, the hold harmless agreement was not satisfactory to all parties and an assignment of contract was prepared. Bostic consulted Harold Bell, an attorney who is not a member of Vandeventer, for the preparation of this agreement in February or March of 2001 because he thought Lowenstein might have a conflict.

Finally, Bostic testified that he spoke with Lowenstein in late July or early August of 2001 about B & L Development Corporation ("B & L") and what he thought were the weaknesses in Arriba's claims against him. This was not disputed on cross-examination.

## Lowenstein and McGann as Witnesses

Rule 3.7 provides in pertinent part:

*Lawyer as Witness.*

(a) A lawyer shall not act as an advocate in an adversarial proceeding in which the lawyer is likely to be a necessary witness except where. . . .

(3) Disqualification of the lawyer would work substantial hardship on the client.

(b) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer may be called as a witness other than on behalf of the client, the

lawyer may continue the representation until it is apparent that the testimony is or may be prejudicial to the client.

Count 13 of the bill of complaint seeks a determination of Bostic's stock ownership in Arriba. If Arriba is claiming that Bostic is not a stockholder and Bostic is disputing this, Vandeventer should expect that its attorneys who have performed corporate work for Arriba may be deposed about their knowledge of Arriba's ownership and any statements officers and directors of Arriba made about Bostic's interest in the company. Mr. Matthews stated at the hearing that depositions of Vandeventer attorneys were likely. The threat to call opposing counsel as a witness is, however, not sufficient to require the attorney's removal from the case. *Tolson v. Secor*, 35 Va. Cir. 77 (Fairfax County 1994); *Adelman v. Kernbach*, 43 Va. Cir. 544 (Norfolk 1997); L.E.O. No. 1517.

At this time, I am unable to determine if any Vandeventer attorney will be a "necessary" witness or if the testimony of any Vandeventer attorney would be prejudicial to Arriba. Thus Vandeventer will not be disqualified on this ground.

### *Bostic's Disclosure of Confidences to Vandeventer*

Bostic testified about two disclosures of personal information to Vandeventer. First, he said he had told Vandeventer about his personal and related business. Second, Bostic said he discussed B & L with Lowenstein in late July or early August and had told Lowenstein what he thought were weaknesses in Arriba's claims against him.

Bostic also testified that, in discussions with Lowenstein about the hold harmless agreement with Arriba, he considered Lowenstein to be representing him, Mr. DeLauney, and Arriba and that Lowenstein never indicated that he was representing only Arriba. He further testified that he expected the discussions were confidential. These discussions occurred before Bostic hired Mr. Bell.

Bostic retained Mr. Bell in the assignment of contract negotiations with Arriba because he realized Lowenstein might have had a conflict of interest. Nonetheless, in early August of 2001, while Lowenstein was negotiating a settlement of the Family Services-Little Creek claim for Abante, Bostic spoke to him about Arriba, B & L, and the weaknesses of Arriba's claim against him. Lowenstein never told Bostic not to discuss the matter, that he was representing only Arriba, or that he was preparing a suit against him. Bostic then believed Lowenstein was still his attorney.

Several of the rules of professional responsibility apply.

Rule 1:13. *Organization as Client.*

(a) A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents. . . .

(d) In dealing with an organization's directors, officers, employees, members, shareholders, or other constituents, a lawyer shall explain the identity of the client when it is apparent that the organization's interests are adverse to those of the constituents with whom the lawyer is dealing.

Rule 1.6. *Confidentiality of Information.*

(a) A lawyer shall not reveal information protected by the attorney-client privilege under applicable law or other information gained in the professional relationship . . . the disclosure of which would . . . likely to be detrimental to the client unless the client consents after consultation. . . .

Rule 1.9. *Conflict of Interest: Former Client.*

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless both the present and former client consent after consultation.

Vandeventer claims it never represented Bostic, that, under Rule 1.13(a), it only represented Arriba and Abante, and that Rules 1.6 and 1.9(a) do not therefore require its disqualification. I disagree. Vandeventer's actual representation of Abante and Arriba does not decide the issue. A lawyer may have a duty to preserve confidences disclosed to him under at least three circumstances: (1) where an express attorney-client relationship exists, (2) where an implied attorney-client relationship exists, and (3) where no attorney-client relationship exists but when the non-lawyer has a reasonable expectation that what he tells the lawyer will be kept confidential.

Virginia recognizes both express and implied relationships between attorney and client. An attorney-client relation need not be formally established. "The contract may be express or implied, and it is sufficient that the advice and assistance of the attorney is sought and received, in matters pertinent to his profession." *Nicholson v. Shockey*, 192 Va. 270, 277, 64 S.E.2d 813, 817 (1951). "Whether a contract employing an attorney is express or implied, some indication that the advice and assistance of the attorney was

sought and received is integral to the creation of the attorney-client relationship." *Carstensen v. Chrisland Corp.*, 247 Va. 433, 447, 442 S.E.2d 660, 669 (1994).

There was no express attorney-client relationship between Bostic and Vandeventer. Under the circumstances, I need not decide if there was an implied relationship because I find Bostic had a reasonable expectation that what he told Vandeventer would remain confidential. Some courts and the Virginia State Bar's Committee on Legal Ethics have recognized a duty of confidentiality in this situation. See *Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir. 1978).

Rule 1.9(a) is "substantially the same as D.R. 5-105(D)." See Virginia Code Comparison to Rule 1.9. Prior legal ethics opinions applied D.R. 5-105(D) even when an attorney-client relationship did not exist.

In L.E.O. No. 1517, an attorney represented two affiliated corporations and "S," one of the two shareholders of the corporations. The attorney never represented the other shareholder, who was designated as "M." The attorney was consulted to prepare an agreement to redeem all of M's shares. During the preparation of the agreement, the attorney learned of an alleged breach of fiduciary duty to the corporations by M. The attorney resigned as counsel for the corporations, and another attorney in the same firm represented S in a derivative action against M for the alleged breach of fiduciary duty. The Committee on Legal Ethics was asked if it was proper for the lawyer to represent S in the derivative action and, among the factors, stated was that the lawyer had "never represented the defendant shareholder," i.e., M. The Committee opined that the representation would not be improper as the lawyer had never represented M personally "and provided that the attorney never obtained confidences or secrets from that defendant shareholder during the course of the attorney's representation of the corporation."

In L.E.O. No. 1685, a lawyer previously represented a corporation that was wholly owned by one shareholder. The lawyer never represented the shareholder personally. The shareholder's wife asked the lawyer to represent her in a divorce. The Committee on Legal Ethics opined that the lawyer could represent the wife "so long as no confidences or secrets were obtained from that shareholder or the corporation during the attorney's representation of the corporation that would be pertinent to the divorce action."

Bostic's discussions with Lowenstein about Arriba and B & L involve the "same matters." Bostic's discussions with Vandeventer about his personal and other business matters are "substantially related" to this suit because Arriba seeks punitive damages and a lien on all of Bostic's assets. See *Neuharth v. Quinn*, 23 Va. Cir. 252 (Loudoun County 1991).

In determining whether two matters are "substantially related:"

> the court must decide whether the attorney could reasonably have been exposed to client confidences in the former case. . . .
>
> Where the matters are determined to be substantially related and there was a reasonable chance that the attorney received confidences in the first matter, an irrebuttable presumption arises that confidences were exchanged. . . .
>
> The [former clients] are not required to demonstrate actual confidences.

*Rogers v. Pittston Coal Co.*, 800 F. Supp. 350, 353-54 (W.D. Va. 1992), *aff'd per curiam* 996 F.2d 1212 (4th Cir. 1993). See also *Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d 221 (7th Cir. 1978); *Tessier v. Plastic Surgery Specialists*, 731 F. Supp. 724 (E.D. Va. 1990).

The former client is not required to disclose the actual confidences because:

> To compel the client to show, in addition to establishing that the subject of the present adverse representation is related to the former, the actual confidential matters previously entrusted to the attorney and their possible value to the present client would tear aside the protective cloak drawn about the lawyer-client relationship. For the Court to probe further and sift the confidences in fact revealed would require the disclosure of the very matters intended to be protected by the rule.

*Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d at 224, n. 3, quoting *T. C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F. Supp. 265, 269 (S.D. N.Y. 1953).

Rule 1.6(a) is similar to former D.R. 4-101(A) and (B). "Secret" as defined in former D.R. 4-101(A) is now "other information" in Rule 1.6(a). As was the case with former D.R. 5-105(D), several legal ethics opinions applied D.R. 4-101(A) and (B) even when an attorney-client relationship did not exist. See L.E.O. 1453, 1457, 1546, and 1642. In L.E.O. 1642, the Committee recognized "a duty to keep confidential those consultations that occur outside formal attorney-client relationships which nonetheless create an expectation of confidentiality." As the learned judge observed in *Gay v. Luihn Food Systems, Inc.*, 54 Va. Cir. 468, 471 (Isle of Wight County 2001):

Though not without some dissent, most courts, bar disciplinary committees, and commentators agree that a lawyer need not be actually engaged as an attorney (and thus acquire a contractual attorney-client relationship) for a confidential communication to be protected by the attorney-client privilege.

Here, during Lowenstein's four-year representation of Abante, he learned about certain of Bostic's personal and business matters, and, while representing Arriba, he learned Bostic's opinions about the weaknesses in Arriba's claims against him. Under the circumstances, I find Bostic had an expectation of confidentiality. The use of this information against Bostic would certainly be detrimental to him.

Vandeventer's assertion that its representations of Abante in late July and August was "ministerial" does not warrant much discussion. Lawyers are not debt collectors; they have fiduciary duties to those they represent and those who, in circumstances like these, repose confidences in them.

Lay clients cannot be expected to understand the fine distinctions the Rules of Professional Conduct draw between representing a closely held corporation and representing one of its shareholders. They expect the attorney to safeguard their confidences and to protect their interests. Certainly, by the time Lowenstein became aware of ill will among the principals of Arriba, it was his duty under Rule 1.13(d) to tell Bostic in no uncertain terms that he represented Arriba, not him, and that he should not discuss matters related to Arriba. He failed to do this. Given Vandeventer's lengthy and remunerative representation of Abante and its prior dealings with Bostic, it is, quite simply, astounding that Lowenstein was having any communication whatsoever with Bostic at a time he was preparing a suit against him seeking treble and punitive damages and a lien on his assets.

I fully understand that disqualification motions, like other motions, may be filed for improper purposes. Mr. Matthews stated that he has never before filed a disqualification motion and I have no reason to question this. I also understand that courts ought not lightly deprive a party of the counsel of its choice and that granting the motion in a case of this complexity will require Abante to incur substantial additional expense. Nonetheless, "the right of the public to retain counsel of its choice is secondary in importance to the court's duty to maintain the highest standards of professional conduct to insure and preserve trust in the integrity of the bar." *In re Asbestos Cases*, 514 F. Supp. 914, 925 (E.D. Va. 1981).

The motion is granted.